**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael Angel PASCUAL, Lewis Hendricks and Robert Rosenfeld, Defendants-Appellants.**

No. 78-5638.

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1979.

---

David B. Javits, Miami, Fla., for Pascual.

Don S. Cohn, Miami, Fla., for Hendricks.

Charles L. Jaffee, Fort Lauderdale, Fla. (Court-appointed), for Rosenfeld.

Barbara D. Schwartz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before COLEMAN, TJOFLAT and HILL, Circuit Judges.

COLEMAN, Circuit Judge.

Lewis Hendricks, Michael Pascual, Jr., and Robert Rosenfeld were convicted by a jury of (1) conspiracy to manufacture and possess with intent to distribute, (2) manufacturing, and (3) possession with intent to distribute, methaqualone, a Schedule II controlled substance, 21 U.S.C., Sections 846 and 841. They seek reversal on the grounds that

(1) The District Court erred in refusing to exclude a letter from Pascual to Stace Gordon, an unindicted co-conspirator, because the government had not furnished the letter to the defendants as a discoverable statement under Fed.R.Crim.P. 16(a);

(2) The District Court abused its discretion in denying a continuance where the government had earlier given the defendants, who were professional chemists, the results of its lab tests on the seized substance but had not turned over the lab reports until specifically ordered to do so on the first day of a three day trial;

(3) The evidence was insufficient to convict because it failed to exclude every reasonable hypothesis of innocence and also failed to establish a prima facie case of conspiracy to support admission of the letter under the co-conspirator hearsay exception; and

(4) The District Court erred in not excluding the testimony of a DEA agent who had violated the rule by speaking with a government witness who had not yet testified about courtroom procedure.

We perceive no merit whatever in Points 2 and 4.

## THE SUFFICIENCY OF THE EVIDENCE

We consider first the argument that the evidence was insufficient to support the conviction. If the appellants are entitled to prevail on that point there is no necessity for reaching the others.

The defendants worked for Cordis-Dow Chemical Co., a manufacturer of hollow fiber kidneys for dialysis. Hendricks was a lab supervisor, and Pascual and Rosenfeld were his lab technicians. All three men were graduate chemists.

Gordon, the co-conspirator who was not indicted, was a student at the University of Georgia (Athens). He was a friend of Pascual. At various times during the summer of 1977 Pascual talked with Gordon about plans to manufacture methaqualone. After Gordon returned to Athens, Pascual asked him to order, using a fictitious name, some

N-acelylantranilic acid, a chemical whose only known use is the manufacture of methaqualone. Pascual also sent Gordon the money to purchase the acid. Gordon complied with Pascual's request. Drug Enforcement agents were tipped off, a search warrant was issued for Gordon's apartment, and when the officers arrived Gordon made a clean breast of the whole matter, agreeing to co-operate with the government under a promise that he would not be prosecuted. As a result of this agreement, Gordon delivered the acid to Pascual who paid him $150 for his services. When this delivery was being arranged, the government with Gordon's consent taped Gordon's telephone conversations with Pascual and Rosenfeld.

Later Hendricks and Rosenfeld were arrested while using equipment in the Cordis-Dow lab to manufacture the methaqualone. They claim that they had been in the midst of synthesizing 3, 4 dihydro-3-0-hydroxyethyl phenyl 2 methyl 4-6X0 quinazalone, a metabolite (the end product of the body's metabolism of a substance) of methaqualone. They say they were experimenting to determine whether the Cordis-Dow kidney could remove the metabolite from the bloodstream but they had never received their superior's permission to conduct such an experiment. In fact, the Company performed no research in that lab and it lacked a DEA number allowing it to have controlled substances. The product seized at the arrest was methaqualone, although its exact form was disputed.

■ The standard for reviewing the sufficiency of the evidence to support a jury verdict is whether "there is substantial evidence taking the view most favorable to the Government, to support it," *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

■ We have read the testimony in the case and we are of the opinion that it clearly established the guilt of all three defendants.

## THE ADMISSION OF THE LETTER FROM PASCUAL TO GORDON

On September 24, 1977, Michael Pascual wrote Gordon a letter, addressed to him at Athens, which Gordon turned over to the agents when his apartment was searched. This highly incriminating letter read as follows:

"September 24, 1977

Stace,

Well here it is . . . $650.00. We want 10 Kg of the chemical. We are at the moment pretty short on money. So spend what you have to wisely & keep the rest. We'll give you the balance when we pick up the stuff. I tried to talk everyone into giving you $150 now but a combination of not having the money and Bob [Robert Rosenfeld] feeling that you should get the balance when you deliver, is the reason why we only sent you what you see. Don't worry about getting ripped off cause I'm here to stick up for you. If worse comes to worse I'll see that you get the money. Things are a little touchy right now cause everyone has forked out a lot of money with nothing to show for it. Just be patience it will work out. Once Bob & Lewis [Hendricks] get to know you they will feel better & things won't be so touchy. Anyway if you find expenses going over the $650 limit let me know. Hopefully this amount should be plenty with some left over.

I suppose if you haven't already you will notice that Kodak has big dealers in Atlanta. Carefully check out Kodak to see if we can maybe order from them next time.

If & when you get a dummy company with a P.O. Box or without, let me know. I'll send some chemical literature to make it look good.

This weekend (Sunday) we plan to start production. I plan to stay away from the apparatus this *time*!

Start thinking of some verbal code for your 3 phone booths. That way, I can call & know where & when to call you without anyone else knowing.

Okay Stace take care & good luck. Lets see if we can make us some $$.

Signed/Mike"

On February 9, 1978, the Magistrate entered a standing discovery order in which the government was directed, under Rule 16(a), "to permit the defendant to inspect and copy, or supply copies within the possession, custody, or control of the government, written or recorded statements made by the defendant and books, papers, documents . . . which the government intends to use as evidence at trial to prove its case in chief, or were obtained from or belonged to the defendant."

Pascual's letter to Gordon, or a copy of it, was never furnished the defendants. The Assistant United States Attorney claimed that the defendants had been invited to inspect the file, that only one of the attorneys did so, and that the letter was in the file. The defense contended that the letter was not in the file. The District Court was subjected to extensive arguments, representations, colloquies, and recriminations on the subject. The Court was of the opinion that the letter had never been furnished to the defendants and at first refused to allow it in evidence.

At a later point, the Judge changed his mind and allowed the government to introduce the letter. The stated basis for this change of mind was that the defendants would not be prejudiced by it, that Pascual of course knew that he had written the letter to Gordon—all of the defendants knew that Gordon was cooperating with the government, was going to take the stand and testify, and most likely would tell of the letter and its contents.

Counsel for Hendricks and Rosenfeld pointed out, however, that there was no proof that their clients new of the letter. Moreover, there was nothing to indicate that Pascual knew that the letter had fallen into the custody and control of the government by virtue of the raid in Athens.

 This letter should have been produced under Rule 16(a)(1)(C) [1] as a paper or a document which the government intended to introduce, and did introduce, as a part of its evidence in chief. A document is an instrument on which is recorded in writing matter which may be evidentially used, and it is likewise true that a paper is a written or printed document, Black's Law Dictionary, Revised Fourth Edition, Pages 568, 1266.

 The letter from Pascual to Gordon was undoubtedly discoverable under Rule 16(a) and it was error to have admitted it in the trial. It must here be pointed out that the rule requires more than a perfunctory invitation to look at the contents of a file, which, in this instance, was in the custody of the Drug Enforcement agents rather than in the hands of the prosecutor. The prosecution knew it had the letter and also knew that as to Pascual it amounted virtually to a signed plea of guilty. The prosecution knew that the letter incriminated Hendricks and Rosenfeld. Under the order to produce, it should have made certain that the letter was made available to the defendants in such a manner as would have eliminated any plausible dispute about it. After much palaver which materially delayed the trial proceedings, while the jury was compelled to "cool its heels" for hours at a time, the District Court stated its belief that the letter had never been furnished the defendants. We have carefully read this record, as a result of which it is quite plain to us that the prosecutor insisted upon an untenably restrictive view of Rule 16(a). The District Court was right in the first place and should have adhered to its original ruling.

 In the Fifth Circuit, however, a failure to comply with Rule 16(a) is not reversible in the absence of a showing of prejudice, *United States v. Arcentales,* 5 Cir., 1976, 532 F.2d 1046, 1050.

It would be hard to make an argument with any degree of plausibility that the use of this letter without prior production did not seriously prejudice the defendants in exercising their option to plead not guilty and in their preparation for trial.[2]

It was a written, signed corroboration of Gordon's oral testimony concerning the activities of Pascual. Pascual was not caught in the act of manufacturing the controlled

---

1. Rule 16.

*Discovery and Inspection*

(a) *Disclosure of Evidence by the Government.*

(1) *Information Subject to Disclosure.*

(A) *Statement of Defendant.* Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent; and recorded testimony of the defendant before a grand jury which relates to the offense charged. Where the defendant is a corporation, partnership, association or labor union, the court may grant the defendant, upon its motion, discovery of relevant recorded testimony of any witness before a grand jury who (1) was, at the time of his testimony, so situated as an officer or employee as to have been able legally to bind the defendant in respect to conduct constituting the offense, or (2) was, at the time of the offense, personally involved in the alleged conduct constituting the offense and so situated as an officer or employee as to have been able legally to bind the defendant in respect to that alleged conduct in which he was involved.

\* \* \* \* \* \*

(C) *Documents and Tangible Objects.* Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

2. We do not know what use the prosecution made of the letter in its arguments to the jury. The arguments were recorded, but they were not transcribed and sent to this Court on appeal.

substance but the letter declared his intention to stay away from the apparatus after he received the essential material from Gordon. In short, it was a written plea of guilty to the allegations contained in the indictment.

The letter incriminated Hendricks and Rosenfeld by name and there is nothing to show that they had knowledge of the letter prior to its presentation at trial.

A new trial with this nail in the coffin lid, now fully disclosed, may likely result in another verdict of guilty. Nevertheless, the vindication of Rule 16, and notice to prosecutors in this Circuit that they must effectively comply with it, leaves no choice but to reverse these convictions and remand for a new trial.

REVERSED and REMANDED.