**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Scott Todd NOE, Meridith Rogers, Defendants-Appellants.**

No. 86–8462.

United States Court of Appeals, Eleventh Circuit.

July 15, 1987.

David N. Levine, Atlanta, Ga., for Noe.

Stephanie Kearns, Fed. Def. Prog., Atlanta, Ga., for Rogers.

Stephen S. Cowen, U.S. Atty., Mary Jane Stewart, Atlanta, Ga., for plaintiff-appellee.

Before RONEY, Chief Judge, KRAVITCH and EDMONDSON, Circuit Judges.

KRAVITCH, Circuit Judge:

Codefendants S. Todd Noe and Meredith Rogers were convicted after a jury trial of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and of distribution of methamphetamine in violation of 21 U.S.C. § 841.[1] Noe appeals his convictions primarily on the ground that the trial court improperly admitted into evidence on rebuttal a tape recording of a telephone conversation between an undercover drug agent and an individual identified by the agent as Noe. Noe contends that admission of the tape constitutes reversible error due to the government's failure to provide the tape in response to Noe's pre-trial discovery request filed pursuant to Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure. Rogers does not appeal her distribution conviction, but challenges her conspiracy conviction as unsupported by the evidence and as based upon an erroneous jury instruction. We reverse Noe's

---

1. Noe was charged and convicted of two counts of distribution; Rogers was charged and con- victed of only one distribution count.

convictions due to the discovery violation, but affirm Rogers' conspiracy conviction.

## I. BACKGROUND

The government's case against both co-defendants rested largely on testimony of two undercover agents of the federal Drug Enforcement Administration (DEA). The agents testified that several times during the span of a week they met Noe, whom they knew as "Scott," at various Atlanta nightspots to discuss the possibility of Noe's assisting them in establishing a clandestine methamphetamine laboratory. They testified that at one of the early meetings they requested a sample of methamphetamine, and that Noe subsequently instructed one of them to retrieve an eyeglass case that was lying on the table at which Noe and the agent were sitting. The case was found to contain methamphetamine. One agent testified that he inspected the contents of the case and then paid Noe $1,000. The agents further testified that the next day they asked Noe for another sample and for a list of equipment and chemicals needed to set up a methamphetamine laboratory. According to their testimony, Noe informed them a day later that they should get the sample and list from "Meredith," referring to appellant Rogers. The agents were familiar with Rogers through another, unrelated undercover investigation they were then conducting.

The agents met with Rogers the following day. After stating that she had something for them from "Scott", Rogers handed them an envelope containing a methamphetamine sample and a list of materials. According to the agents, Rogers remarked that she hoped the quantity of the sample was sufficient, explaining: " 'I had to cut it out of a chunk.... Scott keeps all of his money and marijuana and stuff at my house when he is in town.' " The agents testified that when they asked Rogers whether "Scott" could be trusted in the

arrangement they were negotiating, she replied that she did not know the details of their transactions, but that "Scott" was " 'good at what he does.' " The agents testified that their dealings with Noe and Rogers ended at Noe's insistence after Rogers noticed one of the agents following her in traffic.

Testifying in his defense, Noe denied that he was involved in any of the events recounted by the agents or that he had ever spoken with the agents. He contended that he was visiting with family in Costa Rica during the entire time that the events were alleged to have taken place. In support of this testimony, Noe introduced into evidence a passenger receipt for a round-trip airline ticket to Costa Rica reserved in his name. Noe attempted to introduce other evidence to support his contentions, but the court ruled the evidence inadmissible.[2]

On rebuttal, the government offered into evidence a tape recording of a telephone conversation in which one of the undercover DEA agents and a man identified by the agent as Noe agreed to meet the next day at an Atlanta bar. According to the agents, the date of the tape corresponded to the time during which Noe claimed that he was in Costa Rica. Noe objected to admission of the recording on the ground that the government had failed to provide him the tape before trial despite his timely request, pursuant to Rule 16(a)(1)(A) of the Federal Rules of Criminal Procedure, for all statements of the defendant. Although conceding that the tape should have been provided to Noe, the government asserted that the failure to do so was inadvertent. The district court admitted the recording into evidence.

## II. NOE

■ In challenging admission into evidence of the taped telephone conversation, Noe relies primarily on *United States v. Rodriguez*, 799 F.2d 649 (11th Cir.1986) (per curiam). In *Rodriguez*, a panel of this

---

2. On appeal, Noe asserts that the district court committed reversible error in refusing to admit his passport into evidence. Noe urges that the entries contained in the passport would have further corroborated his alibi story. Because of our resolution of Noe's Rule 16 violation, we need not consider his evidentiary claim.

court reversed a conviction where the government, in violation of Fed.R.Crim.P. 16(a)(1)(C), failed to disclose to the defendant materials that officers had taken from the defendant's wallet after his arrest. 799 F.2d at 652. The *Rodriguez* court concluded that this discovery violation substantially prejudiced the defendant's rights when, in cross-examining the defendant concerning his denial that he maintained contacts in Colombia, the government attorney referred to names and telephone numbers that were found in the wallet. *Id.* at 653. The court reasoned that "[b]y failing to turn over for discovery what it told the jury were his personal papers, the government deprived [the defendant] of any chance to prepare his case to meet that evidence." *Id.*

The government urges that *Rodriguez* does not compel reversal of Noe's convictions. Under *Rodriguez,* a violation by the government of the criminal discovery rules warrants reversal of a conviction only if the defendant shows prejudice to substantial rights. Moreover, *Rodriguez* recognized that the existence of "actual prejudice will often turn on the strength of the government's case." *Id.* at 652. The government argues that here, in contrast to the relatively weak, largely circumstantial evidence presented in *Rodriguez,* the case against Noe was based on the extensive direct testimony of the two undercover DEA agents. Furthermore, Noe's alibi defense was largely uncorroborated. Thus, according to the government, to permit Noe to "fabricate" an unsupported alibi story to conform to the prosecution's evidence, without permitting the government

full opportunity to rebut, would result in a miscarriage of justice.

The government's arguments, however, misconstrue both the purpose of the criminal discovery rules and the concept of actual prejudice resulting from violations of those rules by the government. As the *Rodriguez* court noted, the purpose of Rule 16(a) is "to protect the defendant's rights to a fair trial." *Id.* at 654. And, contrary to the government's contentions, the degree to which those rights suffer as a result of a discovery violation is determined not simply by weighing all the evidence introduced, but rather by considering how the violation affected the defendant's ability to present a defense. *See United States v. Pascual,* 606 F.2d 561, 565–66 (5th Cir. 1979) [3]; *United States v. Padrone,* 406 F.2d 560, 561 (2d Cir.1969) (per curiam). Where the government at trial introduces undisclosed evidence that tends to undermine one aspect of the defense—as occurred in *Rodriguez*—the existence of actual prejudice often will turn on the strength of the remaining elements of the government's case. Here, however, the government introduced evidence that attacked the very foundation of the defense strategy. As the *Rodriguez* court observed, the failure of the government to disclose " 'statement[s] made by the defendant is so serious a detriment to the preparation for trial and the defense of serious criminal charges that where it is apparent, as here, that [the] defense strategy may have been determined by the failure to [disclose], there should be a new trial.' " 799 F.2d at 651 (*quoting Padrone,* 406 F.2d at 561).[4]

**3.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**4.** The dissent apparently rejects this statement by the *Rodriguez* court as "non-binding dicta of this circuit" because it suggests an approach— and requires a result—that the dissent considers "mistaken." *See infra* at 611 n. 3. Although the dissent may disapprove of its implications, this statement by the *Rodriguez* court can hardly be discounted as "non-binding dicta," for it was central to that court's conclusion that the pur-

pose of Rule 16 is to "protect the defendant's right to a fair trial." 799 F.2d at 654. This understanding of the purpose of Rule 16 was the principal basis for the holding of *Rodriguez,* and it compels the result of this case. Moreover, the *Rodriguez* court's statement of the purpose of Rule 16 was fully supported by prior decisions of this court and its predecessor court. *See, e.g., United States v. Pascual,* 606 F.2d 561, 565–66 (5th Cir.1979); *see also United States v. Martinez,* 763 F.2d 1297, 1315 (11th Cir.1985) ("[T]his was not a case in which the prosecutor has ... hidden from discovery a statement of the defendant only to spring it on him in the middle of a trial. We condemn that sort of

Under the theory advanced by the government, the prosecution, by design or inadvertence, could withhold discoverable inculpatory evidence until the defendant asserted a defense strategy based on the apparent nonexistence of that evidence, thus foreclosing other, possibly viable, defense strategies. Unless a court concluded, based on all the evidence introduced, that the case against the defendant was "not strong," the discovery violation would be considered harmless. We refuse to adopt such a rule, for it would encourage precisely the "trial by ambush" that the Federal Rules of Criminal Procedure were designed to prevent. *See United States v. Martinez*, 763 F.2d 1297, 1315 (11th Cir. 1985).

The government's appeals to "justice" to uphold Noe's guilty verdicts are misplaced. Although Noe certainly does not have a right to "fabricate" an alibi story, the Federal Rules of Criminal Procedure provide him a right to discover all statements that he made to law enforcement officials, and, correspondingly, to devise a defense strategy on the basis of the evidence disclosed.[5] The same rules permit the government to demand any alibi defense a defendant intends to assert. Fed.R.Crim.P. 12(a). Had the government either complied fully with

Noe's discovery request or availed itself of its authority to demand the details of any alibi story, it would not now be before this court invoking vague notions of justice. Likewise, had Noe been aware of the tape recording prior to trial, his counsel "might well have advised [him] not to take the stand." *Padrone*, 406 F.2d at 561. The government, however, failed to comply with Noe's discovery request and did not disclose the tape recording until after Noe had developed and implemented his trial strategy. Consequently, the government cannot now claim that the discovery violation was harmless. In *United States v. Pascual, supra*, our predecessor court was confronted with a situation in which the government had introduced into evidence a previously undisclosed letter which directly incriminated two codefendants. The government there apparently argued, as it does here, that the discovery violation did not prejudice the defendants' substantial rights because the evidence overwhelmingly demonstrated their guilt. The court stated:

> It would be hard to make an argument with any degree of plausibility that the use of this letter without prior production did not seriously prejudice the defendants in exercising their option to

---

tactic."); *United States v. Arcentales*, 532 F.2d 1046, 1050 (5th Cir.1976) (finding no prejudice in discovery violation because "the inculpatory statement became known during the government's case-in- chief" and not after "[t]he government [had been] lying in wait with statements that could impeach the Defendant if he decided to testify"). Consequently, even were we to agree with the dissent that *Rodriguez* and prior cases of this court were mistaken as a matter of "judicial policy," this panel nevertheless would be bound by their precedent absent an intervening decision by the Supreme Court or by the *en banc* court of this circuit. *E.g., Flowers v. United States*, 764 F.2d 759, 761 (11th Cir. 1985); *see also Bonner v. City of Prichard, supra*.

Nor can the dissent escape the binding effect of *Rodriguez* by distinguishing its facts. Contrary to the dissent's reconstruction of Noe's arguments, Noe does not contend that the discovery violation gave him insufficient time to prepare a challenge to the authenticity of the recording. Rather, he claims that the government's use of the undisclosed evidence for impeachment purposes denied him the opportunity to "prepare his case to meet [the govern-

ment's] evidence," *Rodriguez*, 799 F.2d at 653, and infringed his Fifth Amendment right not to testify. Once Noe had prepared his trial strategy and elected to testify, no amount of additional preparation time could have cured the effects of the government's use of previously undisclosed evidence. His failure to request a continuance thus is irrelevant. Similarly, given that the use of the undisclosed evidence for impeachment purposes denied Noe the opportunity to prepare his defense to meet the government's evidence, any distinction between the recording at issue here and the tangible evidence at issue in *Rodriguez* also is irrelevant. Underlying the dissent's conclusion that Noe did not suffer prejudice to substantial rights is the assumption that the right to prepare a defense to meet the prosecution's evidence is not itself substantial. This assumption, however, is flatly contradicted by our precedents, as is the dissent's contention that Noe's rights were not prejudiced because the tape was "devastating" to his defense. *See Rodriguez, supra; Pascual, supra*.

5. In certain situations where undisclosed evidence is offered to rebut perjured alibi testimony, a mistrial might be the appropriate remedy.

plead not guilty and in their preparation for trial.

. . . .

[The undisclosed letter] was a written plea of guilty to the allegations contained in the indictment.

. . . .

A new trial with this nail in the coffin lid, now fully disclosed, may likely result in another verdict of guilty. Nevertheless, the vindication of Rule 16, and notice to prosecutors in this Circuit that they must effectively comply with it, leaves no choice but to reverse the convictions and remand for a new trial.

606 F.2d at 565–66. We have no choice here but to do the same.[6]

## III. ROGERS

In appealing her conspiracy conviction, Rogers contends that the verdict was based upon an erroneous instruction to the jury and that it was unsupported by evidence. We reject both claims.

■ Rogers requested that the court instruct the jury not to consider the statements of one codefendant against the other unless the jury first found that the government had shown beyond a reasonable doubt the existence of a conspiracy. This requested instruction, however, is contrary to the law of this circuit. Rule 801(d)(2)(E) of the Federal Rules of Evidence permits an extrajudicial statement of one coconspirator to be considered as evidence against another coconspirator only if the trial court first determines that the prosecution has shown, by a preponderance of the evidence independent of the extrajudicial statement: "(1) that a conspiracy existed, (2) that the coconspirator and the defendant against whom the coconspirator's statement is offered were members of the conspiracy, and (3) that the statement was made during the course and in furtherance of the conspiracy." *United States v. James,* 590 F.2d 575, 583 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Contrary to Rogers' proposed instruction, however, the rule does not further require that the jury make an independent determination of the existence of a conspiracy before it may consider the extrajudicial statements of coconspirators admitted into evidence. *See United States v. Monaco,* 702 F.2d 860, 878 (11th Cir.1983).[7] Because the instruction requested by Rogers was not a substantially correct statement of the law, the refusal of the court to give that instruction cannot constitute reversible error. *See, e.g., United States v. Lopez,* 758 F.2d 1517, 1521 (11th Cir.1985) (failure to give requested charge warrants reversal only if the requested instruction was substantially correct and was not addressed in the charge actually given, and if its omission seriously impaired the presentation of an effective defense), *cert. denied,* —— U.S. ——, 106 S.Ct. 789, 88 L.Ed.2d 767 (1986).

■ We also reject Rogers' claim that the evidence was insufficient to support her conspiracy conviction. Rogers argues that the government introduced no evidence connecting her to Noe's alleged scheme to manufacture methamphetamine. Yet neither the conspiracy indictment nor the government's presentation of its case depended upon any direct link between Rogers and the manufacturing scheme. Rather, the indictment charged that Rogers conspired to distribute methamphetamine. As the government argued at trial and on

---

**6.** Noe claims that because his alibi defense now "has lost the element of surprise," he is entitled to an acquittal as a result of the discovery violation. He offers no legal support for this proposition, and we dismiss it as without merit. We similarly reject the government's contention that Noe waived his right to a reversal by failing to move for a mistrial in addition to objecting to the introduction of the tape recording. An objection properly preserves an evidentiary ruling for appellate review. *Cf. Saunders v. Chatham County Bd. of Comm'rs,* 728 F.2d 1367, 1368 (11th Cir.1984) ("[C]ounsel cannot remain silent at trial and then contend that evidentiary rulings require reversal.").

**7.** The requested instruction further misstated the applicable law by suggesting that a conspiracy could not be found absent an overt act in furtherance of the conspiracy. When the charge involves a drug conspiracy in violation of 21 U.S.C. § 846, the government is not required to prove an overt act. *E.g., United States v. Alberti,* 727 F.2d 1055, 1060 (11th Cir.1984).

appeal, Rogers could be found guilty of such a conspiracy if she conspired with another to make only the single distribution of methamphetamine to the undercover agents.

Viewing, as we must, the evidence in the light most favorable to the government, e.g., *United States v. Brooks*, 703 F.2d 1273, 1277 (11th Cir.1983), we conclude that there was substantial evidence to support the jury's finding that Rogers conspired to distribute methamphetamine. The agents testified that Rogers told them not only that the envelope containing the methamphetamine sample came from "Scott," but also that she herself had cut the sample from a "chunk." The jury thus had sufficient evidence from which to find that Rogers agreed with someone else to forward the methamphetamine to the agents and from which to infer that Rogers was aware at least that the material was contraband. Rogers' conspiracy conviction, consequently, must be affirmed.

## IV. CONCLUSION

Based on the foregoing analysis, the convictions of appellant Noe are REVERSED; the convictions of appellant Rogers are AFFIRMED.

EDMONDSON, Circuit Judge, concurring in part and dissenting in part:

I concur in the affirmance of Rogers' conviction but dissent from the reversal of Noe's conviction.

The majority today holds that the district court erred by admitting on rebuttal a tape recording refuting Noe's sole defense—Noe's alibi that he had been in Costa Rica during the drug transactions. According to the majority, the district court was required to exclude the tape because the government failed to disclose it prior to trial in violation of Fed.Rule Crim.Proc. 16(a)(1)(A). Although I agree with the majority that the government violated Rule 16, I disagree that this violation required exclusion of the undisclosed tape recording from evidence. Exclusion of the tape, I believe, would be contrary to sound judicial

policy and is required by neither our precedent nor Rule 16.

Rule 16(a)(1)(A) states that "[u]pon request of a defendant the government shall permit the defendant to inspect and copy ... any relevant ... recorded statements made by the defendant...." Rule 16(d)(2) provides that

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter any other order it deems just.

As this language indicates, the government's violation of Fed.Rule Crim.Proc. 16(a)(1)(A) did not automatically prohibit the use of the undisclosed evidence at trial. Rather, relief for this violation lay within the discretion of the trial court. *United States v. Rodriguez*, 799 F.2d 649, 652 (11th Cir.1986). On appeal, therefore, the trial court's decision to admit the tape recording despite the Rule 16 violation can be reversed only for abuse of discretion. No such abuse of discretion occurred in this case.

The admission of the tape recording into evidence was necessary to enable the government to rebut the defendant's apparently perjurious alibi defense. Noe testified in his defense that he was in Costa Rica from November 10, 1985, until November 23, 1985. The government proffered in rebuttal a tape recording of a telephone conversation on November 14, 1985, between DEA Agent Peterson and an interlocutor who was apparently Noe, in which Peterson and the interlocutor planned to meet at a bar in Atlanta, Georgia that night and referred to a meeting "last night" at another Atlanta bar. Over defendant's objection, the district court admitted the tape recording. The tape was highly probative evidence. It strongly suggested that Noe was in Atlanta during the time of the alleged drug transactions and—

as Noe concedes—devastated his alibi defense.[1]

A defendant should not be able to take the stand and to testify and then to rely on Fed.Rule Crim.Proc. 16 to exclude evidence which strongly indicates that his testimony on a crucial issue was perjurious. To have excluded the tape recording from evidence—as the majority today holds was required—would have unjustifiably interfered with the truth-seeking function of Noe's criminal trial. A felony trial is not some game in which every slip of the prosecutor is a gain for the accused; in fact, felony trials are by their nature not dainty proceedings and ought not be expected to be. The fundamental purpose of a criminal trial is to arrive at a true determination of the defendant's guilt or innocence. *See Rose v. Clark,* —— U.S. ——, 106 S.Ct.

3101, 3105–06, 92 L.Ed.2d 460 (1986); *Henderson v. United States,* 237 F.2d 169, 172 (5th Cir.1956).[2] Quite simply, the interest in seeking the truth here—where the rebuttal evidence so directly refuted defendant's sole defense—overrode the policy considerations which sometimes justify exclusion of evidence for a violation of Fed. Rule Crim.Proc. 16.[3] The truth-seeking function of the trial, I believe, in and of itself justified the admission of the tape recording into evidence.

Another reason why I believe that the admission of the tape was not abuse of discretion is that Noe did not suffer prejudice to substantial rights. A showing of prejudice to substantial rights is a prerequisite for reversal of a district court's exercise of discretion in admitting evidence not disclosed by the government in violation of

1. Indeed, at one point during oral argument before this court, Noe's counsel conceded that the tape recording demonstrated that Noe had lied. In response to direct questions from this court, Noe's counsel answered:

   Court: [I]s there any way to prove alibi with that tape recording in evidence?

   Noe's Counsel: Well sir, I think it's a fair statement to say that that tape recording pretty well devastated—

   Court: I understand that because they found out that he'd been lying.

   Noe's Counsel: In essence, I think that's a fair statement...."

   Later in the oral argument, Noe's counsel was more equivocal on this issue, stating that he did not know whether Noe had lied.

   In any event, this dissent is not based on a determination that Noe in fact lied. Rather, it is based on my conclusion that the truth-seeking function of a criminal trial justified the admission of highly probative evidence that tends to refute directly defendant's testimony on a critical issue.

2. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

3. In many contexts, courts permit the government to impeach or rebut a criminal defendant's testimony with evidence that would otherwise be inadmissible. *See, e.g., Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) (evidence obtained in violation of fourth amendment admissible to impeach defendant's testimony); *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (statement obtained in violation of *Miranda* admissible to

impeach defendant's testimony, provided statement is otherwise trustworthy); *accord Brown v. United States,* 356 U.S. 148, 154, 78 S.Ct. 622, 626, 2 L.Ed.2d 589 (1958) (by taking stand and testifying in his own defense, defendant waives fifth amendment privilege against compelled self-incrimination; scope of waiver is determined by scope of relevant cross-examination). Such cases recognize that powerful considerations favoring exclusion of evidence must sometimes be overridden to enable the government to rebut a defendant's testimony. As the Supreme Court reasoned in *Walder,*

> It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradictions of his untruths. Such [a result] would be a perversion of the Fourth Amendment.... [T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility.

*Walder,* 347 U.S. at 65, 74 S.Ct. at 356.

The majority today takes an approach diametrically opposed to the above cases—it concludes that the need to exclude government evidence is particularly strong *after* a defendant testifies. I believe that the majority's approach is mistaken. Certainly, the majority's approach is not required by Supreme Court precedent. I would decline to follow the non-binding dicta of this circuit or non-binding decisions of other circuits to the extent that they suggest such an approach.

Fed.Rule Crim.Proc. 16. *United States v. Rodriguez*, 799 F.2d 649, 652 (11th Cir. 1986).

Noe stressed in his appellate briefs and in oral argument to this court that his sole defense at trial was alibi and that his sole defense at a new trial, if granted, would be alibi. Moreover, he asserted that the admission of the tape "devastated" his alibi defense at his trial and *would do so at a new trial, if granted.* [4]

In light of Noe's own assertions, the majority's conclusion that Noe suffered substantial prejudice appears incorrect. For example, suppose that the government had complied with Fed.Rule Crim.Proc. 16 and disclosed the tape to Noe before trial. What could Noe have done differently at trial? Noe asserts that he might have decided not to testify. His sole defense, by his own concession, was and is the alibi that he was in Costa Rica from November 10 to November 23. Usually, the alibi defense, as a practical matter, requires the defendant to testify. Even if he had not taken the stand, he still would have had to attempt to prove the alibi and still would have had to contend with the tape recording that shows him in Atlanta on November 13 and 14. By his own concession, the tape is devastating to the alibi defense.

Noe argues that if the government had disclosed the tape earlier, he would have more time to prepare a challenge to the authenticity of the tape. But when confronted with the tape, Noe requested neither a mistrial nor a continuance. Having failed to request a continuance or mistrial, Noe cannot now complain that he was prejudiced by lack of time to attack more effectively the belatedly disclosed tape recording. *See United States v. Scruggs*, 583 F.2d 238, 242 (5th Cir.1978) (holding that defendant failed to show prejudice to substantial rights from admission of evidence not disclosed in violation of Fed.Rule Crim. Proc. 16, noting that "significantly, counsel did not ask for a longer recess or a continuance so that he might more effectively meet this evidence."); *see also United States v. James*, 495 F.2d 434, 437 (5th Cir.), *cert. denied*, 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144 (1974); *United States v. Bailey*, 550 F.2d 1099, 1100–01 (8th Cir. 1977).[5]

Also, Noe's counsel argues that if he had known about the tape and realized that Noe was lying, he would have approached plea bargaining differently. But Fed.Rule Crim.Proc. 16 was not designed to enable a criminal defendant to mislead his own counsel and then subsequently claim prejudice because the counsel did not advise him to plea bargain.[6]

Noe and the majority rely heavily on *United States v. Rodriguez*, 799 F.2d 649 (11th Cir.1986). *Rodriguez*, however, is materially different in at least four respects. First, Rodriguez requested a mistrial whereas Noe requested neither a con-

---

**4.** Noe's original brief on appeal argued that, once the government revealed the tape recording, his "strategy and entire defense were devastated" and that "the jury had no choice but to convict." Appellant's Brief, p. 18, *see also id.*, p. 20. Noe further argued in his brief that

the prosecutor has ruined Appellant's chance at a fair trial even if this court should order a new trial. All of Appellant's well laid defense strategy ... is rendered useless at a new trial. He has lost the element of surprise. The Government now knows his entire defense. He cannot change his testimony or his defense. His one chance for acquittal was cruelly and maliciously taken away from him....

Appellant's Brief, pp. 29–30.

**5.** The majority cites *Saunders v. Chatham County Board of Commissioners*, 728 F.2d 1367 (11th Cir.1984), for the proposition that an objection at trial preserves an evidentiary issue for review on appeal. I thoroughly agree with this general proposition, but neither *Saunders* nor this general proposition addresses the particular problem in this case: Noe is complaining of lack of time to prepare a challenge to the authenticity of the tape recording, but he requested neither a mistrial nor a continuance that would have corrected this lack of time.

**6.** In *United States v. Lewis*, 511 F.2d 798 (D.C. Cir.1975), the court suggested that admission of evidence not disclosed in violation of Fed.Rule Crim.Proc. 16 may prejudice a defendant because "not every ... defendant chooses to tell his attorney what he remembers" and the defense attorney therefore lacks full information when approaching plea bargaining. *Id.*, 511 F.2d at 802. I think the D.C. Circuit's approach in *Lewis* is mistaken and decline to follow it.

tinuance nor a mistrial to give him time to challenge more effectively the tape recording. Second, the case against Rodriguez was much weaker than the case against Noe.[7] Third, Rodriguez demonstrated prejudice to substantial rights while, as has already been discussed, Noe totally fails to demonstrate prejudice to his rights.

Fourth, the prosecutor's violation of Fed. Rule Crim.Proc. 16(a)(1)(C) in *Rodriguez* —by failing to disclose documents or tangible items—was more likely to surprise unfairly a defendant than the prosecutor's violation of Fed.Rule Crim.Proc. 16(a)(1)(A) in the present case by failing to disclose the tape recording. In *Rodriguez*, the prosecutor surprised the defendant by asking the defendant about certain names and telephone numbers which, the prosecutor hinted, had been found in defendant's wallet. The defendant was reduced to saying "I don't know them. They could be people." The *Rodriguez* court observed that:

> Anyone who has not found in a wallet or purse a name and telephone number that

are not readily identifiable, may not understand this decision. The fact is, however, that Rodriguez had no chance to determine whether or not those names and numbers were actually from his wallet or someone else's, or to think about why the numbers were in his wallet, if indeed they were.

*Rodriguez*, 799 F.2d at 653. A surprised, ordinary citizen could easily be uncertain whether a document or tangible item was in his wallet, car or house and could easily have difficulty explaining on short notice how or why such an item came to be there.

In contrast, a person knows whether or not he has made a phone call to arrange a meeting in Atlanta concerning drugs. Noe did not need a chance to determine whether or not he had made such a phone call. He knew whether or not he had. Nor did Noe need time to think about why he made such a phone call, if he did.[8] For all these reasons, *Rodriguez* is a materially different case which did not prohibit admission of the tape recording in the present case.[9]

---

**7.** This court stressed in *Rodriguez* that the government's case was weak. The evidence against Rodriguez consisted of a co-defendant's actions in leading agents to Rodriguez—subsequently repudiated by the co-defendant as a false setup; an alleged statement—"uno por uno"—made by Rodriguez; a beeper found on Rodriguez; and evidence that Rodriguez's assets did not correlate with his income. *Rodriguez*, 799 F.2d at 652. In contrast, the prosecutor's case against Noe—even excluding the tape recording—was considerably stronger. Two DEA agents testified that they had repeatedly spoken in person and over the phone with Noe over a several day period concerning drug transactions. Agent Marsh positively identified Noe. Agent Peterson at first was not one "hundred percent" sure that Noe was the person with whom he had dealt, but later testified that after having observed Noe for a few days at trial he was "positive" that Noe was the person. Apparently, Agent Peterson's initial failure to identify Noe definitively at trial was caused by the fact that Noe significantly altered his appearance before trial.

**8.** The government introduced the taped phone conversation in its rebuttal case. On surrebuttal, Noe testified that he did not make the telephone call that was recorded and that he was in Costa Rica at the time.

**9.** The majority contends that the following excerpt from *Rodriguez* represents a holding of

that case and requires reversal of Noe's conviction:

> We believe that noncompliance with an order to furnish a copy of a statement made by the defendant is so serious a detriment to the preparation for trial and defense of serious criminal charges that where it is apparent, as here, that his defense strategy may have been determined by the failure to comply, there should be a new trial.

*Rodriguez*, 799 F.2d at 654 (quoting *United States v. Padrone*, 406 F.2d 560 (2d Cir.1969)). Moreover, the majority asserts that this dissent mischaracterizes the above excerpt from *Rodriguez* as well as binding holdings of other cases as mere dicta.

First, the above excerpt from *Rodriguez* does not constitute the holding of that case. The excerpt is part of the *Rodriguez* court's description of the Second Circuit's opinion in *Padrone* and is actually a quotation from *Padrone*. By describing and quoting from another circuit's holding, without more, this court does not necessarily adopt that other circuit's opinion as its own.

I believe that the holding in *Rodriguez* is that when the government's case against a defendant is weak, the government surprises defendant by referring to documents or tangible items (not admitted in evidence) as to which an ordinary citizen could easily be uncertain and have difficulty explaining on short notice, and the government violated Rule 16 by failing earlier to dis-

Noe also asserts that the district court committed reversible error by excluding from evidence his passport that allegedly supported his alibi defense. Because the tape recording devastates the alibi defense in any event, any error in the exclusion of the passport must be considered harmless. This argument cannot justify reversal.

By this dissent, I do not condone the prosecutor's conduct in this case. A prosecutor who deliberately violates Fed.Rule Crim.Proc. 16 should be subject to sanctions against him personally. Personal sanctions against prosecutorial officers would be a more effective deterrent and have less harmful side effects than excluding evidence of critical importance to the factual question of the defendant's guilt or innocence.

A defendant's adjudication of guilt should not be reversed because of the prosecutor's discovery violation where, as here, the defendant suffered no prejudice thereby. The district court did not abuse its discretion by admitting the highly probative evidence directly refuting Noe's alibi defense. The majority's holding today distorts Fed.Rule Crim.Proc. 16 from an engine for the discovery of truth into an instrument for obfuscation. There is no good reason to do that.

close such documents or tangible items, defendant suffers such prejudice that reversal of his conviction and remand for a new trial is required. Of course, this holding is binding *where applicable.* But, as I have explained in the text of this dissent, the facts of *Rodriguez* are materially different from the facts of the present case. The holding of *Rodriguez* is simply not applicable to the present case.

Second, contrary to the majority's assertion, this dissent properly characterizes as "non-binding dicta" all previous suggestions by this circuit that "the need to exclude government evidence is particularly strong *after* a defendant testifies." *See supra,* footnote 3 of this dissent (emphasis in original). Certainly, the above quotation from *Rodriguez* does not say that the need to exclude government testimony becomes stronger once a defendant testifies. Nor does *United States v. Pascual,* 606 F.2d 561 (5th Cir.1979), which the majority cites. In *Pascual,* the government introduced in its case-in-chief evidence which it had failed to disclose prior to trial in violation of Rule 16. *Pascual* neither involves nor discusses in any way the need to exclude government evidence after a defendant testifies.

Accordingly, I respectfully dissent from the reversal of Noe's conviction.

The majority cites two cases from this circuit which do suggest that the need to exclude government evidence is greater after a defendant testifies. *United States v. Martinez,* 763 F.2d 1297, 1314–15 (11th Cir.1985); *United States v. Arcentales,* 532 F.2d 1046, 1050 (5th Cir.1976). But these suggestions—which were not determinations in respect to an issue actually litigated and necessary to be decided in the cases—are mere dicta. In *Martinez,* the government did not violate Rule 16 at all and introduced the disputed evidence in its case-in-chief. In *Arcentales,* the government disclosed the evidence several days before the defense put on its case. Neither *Pascual, Martinez* nor *Arcentales* involve the issue in this case: whether it is abuse of discretion to permit the government to introduce highly probative evidence to rebut defendant's testimony on a critical issue.

Because the facts of this case are substantially different from earlier cases, none of the decisions cited by the majority actually bind this panel to reach the outcome that the majority has selected for this case.