[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12369
Non-Argument Calendar
_____

D.C. Docket No. 0:13-cr-60299-WPD-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERTO CARLOS CUELLAR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 22, 2015)


Before JORDAN, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Roberto Carlos Cuellar was convicted, after a jury trial, of one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and was sentenced to 210 months' imprisonment.  Cuellar appeals both his conviction and sentence.  After review, we affirm.

## I.  DISCUSSION

### A.  *Rule 16*

Cuellar first contends the district court should have granted his motion for mistrial, after the Government committed what Cuellar characterizes as a violation of Rule 16 of the Federal Rules of Criminal Procedure.  Cuellar asserts the only direct evidence tying him to the child pornography was his statements to the FBI, and his trial strategy was to attack the accuracy of the agents' report of those statements.  He argues the Government's nondisclosure of his statement to the FBI that he refused to write or sign a statement was a discovery violation of Rule 16, and the violation attacked the foundation of his defense strategy and required a mistrial.

Rule 16(a) of the Federal Rules of Criminal Procedure requires the government to disclose during discovery, upon the defendant's request, "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial."  Even if

2

a Rule 16 violation occurred, however, we will not reverse unless the violation prejudiced a defendant's substantial rights, meaning that actual prejudice must be shown. *United States v. Chastain*, 198 F.3d 1338, 1348 (11th Cir. 1999). "The actual prejudice will often turn on the strength of the Government case," *United States v. Rodriguez*, 799 F.2d 649, 652 (11th Cir. 1986), but "the degree to which [a defendant's trial] rights suffer as a result of a discovery violation is determined not simply by weighing all the evidence introduced, but rather by considering how the violation affected the defendant's ability to present a defense," *United States v. Noe*, 821 F.2d 604, 607 (11th Cir. 1987). "Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense, or if the mistake substantially influences the jury." *United States v. Camargo-Vergara*, 57 F.3d 993, 998–99 (11th Cir. 1995).

Assuming, *arguendo*, there was a Rule 16 violation, there was no substantial prejudice that would require reversal. *See Chastain*, 198 F.3d at 1348. The strength of the Government's case at trial was significant. Special Agent Dan Johns testified that agents found a laptop with child pornography and a disc of the Ares file-sharing program in Cuellar's bedroom. At the FBI office, Cuellar provided the password for the computer and showed the agents where the child pornography files were in the library section of Ares, even though he denied downloading them. Johns' investigation showed that Cuellar owned the laptop

since at least 2012, and the time-line analysis showed the computer was used to both view and download child pornography in 2013.

Kimberly Aldunate, Cuellar's roommate, testified the computer belonged to Cuellar, and she had never seen anyone else use it. Even though Cuellar had once given her the password, she had never used the computer.

Yohel Diaz, the forensic computer expert, testified that the files were found in the "my shared folder" in Ares under the user name "Carlos." One of these files included a video downloaded four days before agents executed the search warrant on Cuellar's house. Similarly, searches for PTHC, or preteen hardcore content, had been made in Ares two days before agents executed the search warrant.

As such, even without any of Cuellar's statements to the agents, there was evidence the computer belonged to him, no one else used it, and someone whose user name was the same as Cuellar's middle name had both downloaded child pornography four days before agents executed their search and searched for child pornography two days before the agents' search.

The types of substantial prejudice present in *Noe* and *Camargo-Vergara* are not present here. Unlike *Noe*, Cuellar was not unexpectedly forced to explain his presence after presenting his alibi, and unlike *Camargo-Vergara*, Cuellar was not unexpectedly forced to explain his apparent knowledge of drugs after emphasizing that he wanted nothing to do with them. *Noe*, 821 F.2d at 607-08; *Camargo-*

4

*Vergara*, 57 F.3d at 999. Cuellar argues his trial strategy was to attack the accuracy of what the FBI agents claimed he told them, which was the only direct evidence linking him to the child pornography. However, the other evidence against him was significant. Because Cuellar was not substantially prejudiced, the district court did not abuse its discretion in denying his motion for mistrial. *Chastain*, 198 F.3d at 1348; *see also United States v. Perez-Oliveros*, 479 F.3d 779, 782 (11th Cir. 2007) (stating we review the district court's denial of a motion for mistrial for an abuse of discretion).

## B. *Sentencing Enhancements*

Next, Cuellar asserts the district court improperly applied sentencing enhancements for sadistic content, distribution, use of a computer, and the number of images. He contends the Sentencing Commission exceeded its authority in eliminating the intent requirement for violent depictions because it renders the enhancement arbitrary and because it violates due process. Cuellar argues the enhancement for distribution by definition requires a showing of intent because "distributing" means more than merely "making available." He also asserts the enhancement for using a computer is double-counting, and the guideline used in this case was not created through the Sentencing Commission's normal process and thus yields disproportionate results.

5

We review for clear error the district court's factual findings; review *de novo* the district court's legal interpretations of the sentencing guidelines, including rejection of double-counting challenges; and review *de novo* the district court's application of the Sentencing Guidelines to the facts. *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir.), *cert. denied* 135 S. Ct. 764 (2014).

Cuellar's arguments are without merit. First the district court did not err in imposing the §2G2.2(b)(4) enhancement for sadistic or masochistic conduct. Cuellar does not dispute the files included sadistic content or that the Sentencing Guidelines do not require the Government to prove intent, *see* U.S.S.G. §2G2.2, comment. (n.2); rather, his sole argument is that the enhancement is unconstitutional without a finding of intent. But even if such a finding were still required, Cuellar's intent could have been inferred from the file names themselves. *Cf. United States v. Garrett*, 190 F.3d 1220, 1224 (11th Cir. 1999) (concluding that intending to receive photographs that depicted young children who were vaginally and anally penetrated by adult men, as well as a photograph of a young girl who was vaginally penetrated by a glass bottle, was sufficient to meet the intent requirement of the sadistic content enhancement). Here, many of the file names included the abbreviation "PTHC," indicating the files contained "preteen hardcore" content. Other files had similarly graphic titles that revealed their

6

content.  As such, the district court did not err in applying the sadistic content enhancement.

Second, the district court did not err in applying the enhancement for distribution.  This Court has concluded the distribution enhancement can be applied when an offender uses a peer-to-peer file sharing program:  "Allowing files to be accessed on the Internet by placing them in a file sharing folder is akin to posting material on a website for public viewing.  When the user knowingly makes the files accessible to others, the distribution is complete."  *United States v. Spriggs*, 666 F.3d 1284, 1287 (11th Cir. 2012).

Special Agent Johns testified that Cuellar installed Ares onto his computer.  Johns explained that Ares users shared files out of their "my shared folder."  While the "my shared folder" was the default setting in Ares, it could be disabled by the user.  Furthermore, the transfer screen in Ares showed both the files that were being downloaded as well as the files that were being shared to other users.  Cuellar could have changed the settings in Ares to prevent file-sharing or could have saved the files in a folder not susceptible to file sharing, but he instead left the files in his shared folder accessible to other users.  *Cf. United States v. Vadnais*, 667 F.3d 1206, 1208-09 (11th Cir. 2012) (noting in dicta that a user could change the default settings or could remove the files from the shared folder).  As such, the

7

district court did not err in applying the distribution enhancement. *Spriggs*, 666

F.3d at 1287.

Third, the district court did not err in applying the computer enhancement.

This Court has concluded the sentencing enhancements under § 2G2.2 are meant to

apply cumulatively, since § 2G2.2 is structured so that the range of harms

associated with child pornography can be addressed through various offense level

increases and decreases. *Cubero*, 754 F.3d at 895 (deciding in the context of

§ 2G2.2(b)(3)(F)).  As such, Cuellar's sentence did not constitute impermissible

double-counting. *See id.*

Fourth, Cuellar's final argument—that the pertinent guideline in this case

was not created through the Sentencing Commission's normal process and yields

disproportionate recommendations—is likewise without merit.  Despite Cuellar's

argument that Congress has directed that child pornography penalties be made

hasher over the Sentencing Commission's objection, the Supreme Court has noted

that "the Commission is fully accountable to Congress, which can revoke or amend

any or all of the Guidelines as it sees fit." *Mistretta v. United States*, 488 U.S. 361,

393-94 (1989).

C. *Variance*

Finally, Cuellar argues the district court abused its discretion by not granting

his motion for a downward variance.  Cuellar argues the child pornography

8

guidelines are not the product of the Sentencing Commission's usual empirically grounded procedures and thus are entitled to far less weight than the typical guideline provision under *Kimbrough v. United States*, 552 U.S. 85 (2007). Because the district court sentenced Cuellar within that unreasonable range, his sentence was unreasonable.

We review a sentence for abuse of discretion, using a two-step process. *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008). We first ensure that the district court did not commit any significant procedural errors and, if none were made, then determine whether the sentence is substantively reasonable in light of the 18 U.S.C. § 3553(a) factors and the totality of the circumstances. *Id.* at 1190–91. The burden of establishing that a sentence is unreasonable lies with the party challenging the sentence. *Id.* at 1189.

Cuellar's sole argument is that the guideline applicable to child pornography is not empirically grounded and that the district court should have exercised its discretion to impose a below-guidelines sentence under *Kimbrough*. We have already rejected a *Kimbrough*-type challenge to the child pornography guidelines, concluding that their history and nature distinguish them from the crack cocaine guidelines in *Kimbrough*. *See Pugh*, 515 F.3d at 1201 n.15. Furthermore, *Kimbrough* concluded that a district court may—but is not required to—deviate from the guidelines in a crack cocaine case because the crack/powder disparity

9

might yield a sentence greater than necessary to achieve the purposes of § 3553(a), not that the district court must lower a sentence when the guideline is not supported by empirical data. 552 U.S. at 110.

As such, Cuellar has failed to meet his burden in showing that his sentence was unreasonable, and we affirm his sentence.  *See Pugh*, 515 F.3d at 1189–92.

## II.  CONCLUSION

There was no substantial prejudice to Cuellar's defense, and the district court did not abuse its discretion in denying Cuellar's motion for mistrial. Furthermore, the district court did not err in using the sentencing enhancements to calculate the appropriate guidelines range.  Finally, the district court did not abuse its discretion by denying Cuellar a downward variance, since the sentence imposed was both procedurally and substantively reasonable.  Accordingly, we affirm Cuellar's conviction and sentence.

**AFFIRMED.**