**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Manuel RODRIGUEZ, Jorge Borjas, Julian Bernard, Defendants-Appellants.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Manuel RODRIGUEZ,**
**Defendant-Appellant.**

**Nos. 85–5200, 85–5318.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 5, 1986.

Leon B. Kellner, U.S. Atty., Myles H. Malman and David O. Leiwant, Asst. U.S. Attys., Sonia Escobio O'Donnell, Miami, Fla., for the U.S.

Before RONEY, Chief Judge, CLARK, Circuit Judge, and GIBSON,[*] Senior Circuit Judge.

PER CURIAM:

Three defendants, Manuel Rodriguez, Julian Bernard and Jorge Borjas, were convicted of conspiracy to possess with intent to distribute cocaine, 21 U.S.C.A. § 846, and possession with intent to distribute cocaine, 21 U.S.C.A. § 841(a)(1). They raise different issues on appeal. We affirm the convictions of Bernard and Borjas, but reverse as to Rodriguez because the Government violated a discovery requirement. The Government had taken a wallet from Rodriguez upon his arrest, and without providing discovery so that the defendant could inspect and copy the contents of the wallet as required by Fed.R.Crim.P. 16(a)(1)(C), used the contents in damaging cross-examination. Contrary to the district court's decision, the Government's action could not be discounted as harmless error, under the facts of this case.

The facts reflect the usual activity of Government agents in these kinds of cases. Two Government agents spent about two weeks before a transaction was consummated with defendant Julian Bernard, who was thereupon arrested, and immediately agreed to cooperate. Bernard led the agents to defendant Jorge Borjas who was arrested, and agreed to cooperate. Borjas led the agents to Manuel Rodriguez. The details will be discussed under the points for which they are relevant.

Jerrell Breslin, Coconut Grove, Fla., Peter Raben, Weiner, Robbins, Tunkey & Ross, P.A., Miami, Fla., for Rodriguez.

Arthur W. Tifford, Miami, Fla., for Borjas.

Charles White, Miami, Fla., for Bernard.

*Manuel Rodriguez*

■ At the time of his arrest, the Government agents took a wallet from Ma-

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designa-

tion.

nuel Rodriguez, which contained some names and telephone numbers of people in Colombia. The district court properly held that the failure of the Government to disclose this material to the defendant, and to permit him to inspect and copy it, violated Fed.R.Crim.P. 16(a)(1)(C) and the magistrate's standing order.[1] Contrary to the Government's argument, the requirement that defendant be given things which "were obtained from or belong to" him does not turn on whether they are material intended for use by the Government as evidence in chief at the trial. If they were taken from him, the Government is obligated to permit discovery of them.

■■■ The Government argues that defense counsel did not make a sufficient request to inspect the evidence, nor attempt to obtain the return of his client's personal property, the usual practice on request. The limited inquiry made by counsel, the Government argues, was not sufficient to trigger a discovery violation. This argument is not justified in light of the district court's findings that (1) defense counsel had made a telephone inquiry with the case agent who informed him that he had no discovery evidence that needed to be inspected, and (2) that an in-person inquiry would not have resulted in the discovery of those personal items because of the DEA's improper evidence classification procedure. Upon discovering this, the district court said:

> THE COURT: Well, you had better change your procedure. Because under the standing discovery order, directed by the magistrate, you are supposed to produce any items belonging to the defendant. You had better tell your superior to change your procedures. That is what the magistrate's order states. It is a standard order that applies in every case.

The argument of Government's counsel reflects a serious misunderstanding of the requirements of this discovery rule, confusing it with the discovery required of material the Government plans to use in the case. The district court's decision that there was a discovery violation is not clearly erroneous.

■■■ A discovery violation, however, does not automatically prohibit the use by the Government at trial of the unrevealed evidence. Relief for violations of discovery rules lies within the discretion of the trial court. To support a claim for reversal of the exercise of that discretion, the defendant must show prejudice to substantial rights. *United States v. Scruggs,* 583 F.2d 238, 242 (5th Cir.1978); *United States v. Lewis,* 511 F.2d 798 (D.C.Cir.1975); *United States v. Padrone,* 406 F.2d 560 (2d Cir. 1969).

The actual prejudice will often turn on the strength of the Government case. The Government's evidence against Rodriguez was not strong. The evidence was of Borjas' actions in directing the agents to Rodriguez, which Borjas in a post-trial statement now claims was a false setup; an alleged statement, "uno por uno," made by Rodriguez; a beeper found on Rodriguez; and evidence that Rodriguez's assets did not correlate with his income.

---

1. Fed.R.Crim.P. 16(a)(1)(C) states:

(C) Documents and Tangible Objects. Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, *or were obtained from or belong to the defendant.* (emphasis added)

The magistrate's order reads in relevant part:

A. The government shall permit the defendant to inspect and copy the following items or copies thereof, or supply copies thereof, which are within the possession, custody or control of the government, the existence of which is known or by the exercise of due diligence may become known to the government:

 . . . .

5. Books, papers, documents, photographs, tangible objects, buildings or places which the government intends to use as evidence at trial to prove its case in chief, *or were obtained from or belonging to the defendant.* (emphasis added)

The prejudice to Rodriguez resulted from the use of the wallet material to significantly tie him to Colombia, a well known source of cocaine. On his direct examination, Rodriguez testified about his arrest by the Government agent:

Q. Then what happened?

A. So, he asked me a question there and I didn't want to answer. And so, I think there were some other persons there. They asked me where I am from? And I said I was an American. And so then he asked me, through this other person, where I had been born.

Q. And what happened then?

A. So, when I say that I was from Barranquilla, Colombia—

Q. What did he say?

A. And so he said, "Oh, Colombian." And then he pushed me even harder. And he put my arms back and put handcuffs on me.

During cross-examination, when the Government, over objection, was attempting to develop the ties Rodriguez had with Colombia, counsel asked defendant:

Q. When was the last time that you had been to Colombia before today?

MR. LINOWITZ [COUNSEL FOR RODRIGUEZ]: Objection, Your Honor. Relevancy.

THE COURT: Overruled.

A. If the gentleman realizes that I have been living in this country for 16 years without seeing my family, I cannot remember when the last time was that I went there with my wife.

Q. When was the last time that you had contact, telephone or in person, with anyone in Colombia?

MR. LINOWITZ: Same objection.

THE COURT: Overruled.

A. None whatsoever.

Q. Would it be fair to say then, so that the record is clear, crystal clear, that you have not have contact with anyone in Colombia for many years?

A. Well, perhaps my wife may have called her family.

Q. I'm asking about you, sir, not your wife.

A. Personally, no. My wife does call her family.

Thereupon, the Government counsel asked Rodriguez about certain names and telephone numbers which counsel suggested were found in Rodriguez's wallet. Rodriguez denied having a wallet and denied knowing the persons referred to by counsel.

Q. Who took it away from you?

A. The agent took it away from me.

Q. And they took it away from you because it was in the wallet with the names of other people from Colombia, didn't they?

A. No, they searched me and they took out all of the papers that I had.

Q. Now, in your papers, didn't you have the telephone numbers of these people from Colombia, that I spoke to you about today?

A. I don't know them. They could be people. I don't know them. I really don't know them.

The Government did not introduce into evidence the wallet or its contents. The damage, however, had been done. The Government, without any evidence, and by inferring that the defendant's own documentary evidence proved the point, were able to infer that Rodriguez had close ties to Colombia. By failing to turn over for discovery what it told the jury were his personal papers, the Government deprived Rodriguez of any chance to prepare his case to meet that evidence. Anyone who has not found in a wallet or purse a name and telephone number that are not readily identifiable, may not understand this decision. The fact is, however, that Rodriguez had no chance to determine whether or not those names and numbers were actually from his wallet or someone else's, or to think about why the numbers were in his wallet, if indeed they were.

The denial of a mistrial was based on the fact that there had been no deliberate, intentional discovery violation. This is beside the point, however, when it comes to

evidence that belongs to the defendant. In *United States v. Padrone*, 406 F.2d 560 (2d Cir.1969), the Government inadvertently did not inform the defense that it had a statement given by the defendant. Defense counsel allowed Padrone to take the stand without realizing the witness would be subject to effective cross-examination based on prior inconsistent statements. The court, in reversing and ordering a new trial, stated:

> We believe that noncompliance with an order to furnish a copy of a statement made by the defendant is so serious a detriment to the preparation for trial and the defense of serious criminal charges that where it is apparent, as here, that his defense strategy may have been determined by the failure to comply, there should be a new trial.

*Id.* at 561.

■ The purpose of the rule is not to punish the Government, as to which intentional conduct would be relevant, but to protect the defendant's right to a fair trial, which may be affected whether the conduct is intentional or not. The district court partially rested its decision on Rodriguez's testimony denying the existence of personal items. This bolsters, rather than weakens, defendant's case for a mistrial. His denial was in the face of the unsworn statement of a Government prosecutor. He had been given no chance to either support the denial, or refresh his recollection, which is one purpose of the discovery requirement. The argument that the cross-examination was harmless takes too modest a view of the United States Attorney's ability. The Government's case theory was that Rodriguez was a source of cocaine. Any ties to Colombia, a country known as a cocaine source, would enormously damage his defense. The record will not support the argument that Government counsel failed to make that tie through the use of this evidence, a tie made by no other evidence presented to the jury. Indeed, the Government at oral argument conceded that the questioning was designed to be harmful. The district court reasoned that the material was not introduced in evidence. The

Government's use, however, was just as effective as if it had been introduced in evidence.

The district court erred in failing to grant Rodriguez a mistrial and his conviction on both counts must be reversed.

■ Rodriguez makes a second claim which we should rule on because there may be another trial. Rodriguez asserts the trial court erred in excluding three defense witnesses available to impeach out-of-court declarations made by Jorge Borjas. Rodriguez claims that he is an innocent bystander implicated by Borjas. He wanted to call three witnesses to testify about an attempted bank robbery in Virginia four years earlier where Borjas attempted to implicate an innocent bystander. The trial court excluded this evidence under Fed.R. Evid. 403 on the ground that it was more prejudicial than probative. Determinations of admissibility of evidence rest largely within the discretion of the district court and are not to be disturbed on appeal in the absence of a clear abuse of discretion. *United States v. Glasser*, 773 F.2d 1553, 1559 n. 4 (11th Cir.1985). We find no such abuse in the trial court's decision to focus the jury's attention on the present case, not on one that occurred four years earlier.

### Jorge Borjas

Jorge Borjas presents two arguments: (1) the trial court erred in not referring him for expert psychiatric examination, and (2) the trial court erred in not suppressing a post-arrest statement.

Borjas bases his claim to a psychiatric examination, not on any evidence or testimony presented by his attorney, but upon testimony elicited by Rodriguez's attorney from a doctor, who had performed a forensic psychological analysis four years earlier on Borjas. Testifying on *voir dire* about his earlier analysis, the doctor stated that there were some signs four years ago of "minimum brain disfunction."

■ The district court did not allow Rodriguez to present the doctor's testimo-

ny to the jury, finding that the evaluation was too remote in time to be relevant, and that Borjas' mental condition was not at issue. The legal test for mental competency is whether, at the time of trial, the defendant had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and whether he had "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). As a matter of procedural due process, a criminal defendant is entitled to an evidentiary hearing on his claim of incompetency if he presents sufficient facts to create a "real, substantial and legitimate doubt as to [his] mental capacity ... to meaningfully participate and cooperate with counsel...." *Bruce v. Estelle,* 483 F.2d 1031, 1043 (5th Cir.1973); *Adams v. Wainwright,* 764 F.2d 1356, 1360 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986).

■ Borjas has failed to raise facts sufficient to meet this standard of proof. The district court had the opportunity to observe first-hand the behavior of Borjas when he testified at the suppression hearing held on the same day trial commenced. Borjas' counsel's failure to raise the competency issue is also persuasive evidence that Borjas' mental competence was not in doubt. *Adams,* 764 F.2d at 1360; *Reese v. Wainwright,* 600 F.2d 1085, 1092 (5th Cir.), *cert. denied,* 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979). The findings of the trial court that Borjas' mental competency was not at issue were not clearly erroneous.

■ Borjas also claims that the doctor's testimony, accompanied by inconsistent statements he made on the day of his arrest, should have indicated to the court that Borjas was suffering from some mental disorder while committing the crime. The district court was obviously not convinced by this showing. This presentation did not meet the threshold showing required by *Ake v. Oklahoma,* 470 U.S. 68, 82, 105 S.Ct. 1087, 1097, 84 L.Ed.2d 53, 66 (1985).

■ Borjas claims his post-arrest statement should have been suppressed because he was intoxicated at the time. This argument is based on inconsistent statements he gave on the day of his arrest concerning times and places related to the crime. The Government contends the inconsistencies are minor and that Agent Matthews testified that Borjas exhibited absolutely no signs of intoxication. The district court's credibility finding can not be reversed as clearly erroneous. *United States v. Waskal,* 709 F.2d 653, 656 n. 4 (11th Cir.1983).

We, therefore, affirm the convictions of Jorge Borjas.

### *Julian Bernard*

■ Bernard argues that he was entrapped. The jury was given an entrapment instruction, but rejected the claim and convicted Bernard. The defense was properly presented to the jury. *Kett v. United States,* 722 F.2d 687, 689 (11th Cir.1984). There was no entrapment as a matter of law. There was sufficient evidence presented by the Government which, if believed, would show that Bernard was a willing participant from start to finish. Indeed, at one point Bernard was given the opportunity to back out of the transaction, and did not.

Bernard also argues that he would be entitled to a new trial or judgment of acquittal if Borjas is adjudged mentally incompetent because a person cannot be convicted of conspiring with a mentally incompetent. This claim fails because Borjas was not found to be mentally incompetent.

We therefore affirm the convictions of Julian Bernard.

AFFIRMED AS TO BORJAS AND BERNARD, REVERSED AS TO RODRIGUEZ.