**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Wilfredo Miguel VENTURA, Rene Acosta Perez, Defendants–Appellants.**

**No. 88–5490**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

July 30, 1991.

---

Theodore J. Sakowitz, Federal Public Defender, Hector Flores, Brenda G. Bryn, Asst. Federal Public Defenders, Miami, Fla., for defendants-appellants.

Dexter W. Lehtinen, U.S. Atty., Bruce E. Lowe, Odilio Diaz, Anne M. Hayes, Linda Collins Hertz, Carol E. Herman, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, and ANDERSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

On October 23, 1987, a federal grand jury returned a two-count indictment, charging appellants Rene Perez and Wilfredo Ventura with possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2 (Count I), and conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and § 846 (Count II). Following a jury trial, Perez and Ventura were found guilty on both counts and sentenced, on Count I, to five years imprisonment and four years supervised release and, on Count II, to four years probation to run consecutively with the period of supervised release.[1] Appellants raise three issues on appeal.

## DISCUSSION

■■ A. Perez' Entrapment Defense: Predisposition? Appellant Perez argues, first, that as to his defense of entrapment, the evidence at trial was insufficient for a jury to conclude beyond a reasonable doubt that he was predisposed to commit the crime charged. Entrapment consists of two elements: government inducement of the crime and a lack of predisposition by the defendant to commit the crime.[2] The defense must present sufficient evidence of government inducement to raise the de-

fense.[3] In this case, the district court, having concluded that Perez made a sufficient showing to raise an entrapment defense, gave the jury an entrapment instruction as to Perez. Upon the defense making the requisite showing, "the burden then shifts to the government to demonstrate beyond a reasonable doubt that the defendant was predisposed to commit the offense charged."[4] "Appellate review of a jury decision on entrapment is directed to whether the evidence was sufficient to enable a reasonably-minded jury to reach the conclusion that the defendant was predisposed to take part in the illicit transaction."[5] Appellant Perez argues that his conviction should be reversed because the government failed to prove beyond a reasonable doubt that Perez was predisposed to commit the crimes charged.

"The standard of review we employ in judging the sufficiency of the evidence is whether the evidence—when considered in the light most favorable to the government, and accepting all reasonable inferences from the evidence and the credibility choices made by the jury—proves the appellant's guilt beyond a reasonable doubt. A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the appellant guilty beyond a reasonable doubt."[6]

■■ In weighing the evidence of a defendant's predisposition, the jury must judge the credibility of the evidence and each witness to decide which version of a story to believe.[7] Evidence of predisposition may, among other things, "include the readiness or eagerness of the defendant to

1. Upon motion by Perez, the district court corrected his sentence to delete the four-year term of supervised release. Ventura has also moved to correct his sentence, but that motion has not yet been decided.

2. *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988).

3. *United States v. Andrews*, 765 F.2d 1491, 1499 (11th Cir.1985), *cert. denied*, 474 U.S. 1064, 106

S.Ct. 815, 88 L.Ed.2d 789 (1986); *United States v. Parr*, 716 F.2d 796, 802 (11th Cir.1983).

4. *Andrews*, 765 F.2d at 1499.

5. *Id.*

6. *United States v. Bonavia*, 927 F.2d 565, 569–70 (11th Cir.1991).

7. *United States v. Bain*, 736 F.2d 1480, 1485 (11th Cir.), *cert. denied*, 469 U.S. 937, 105 S.Ct. 340, 83 L.Ed.2d 275 (1984).

deal in the proposed transaction...."[8] Evidence that a defendant was afforded an opportunity to back out of a transaction and did not avail himself of that opportunity also constitutes evidence of predisposition.[9]

■ Appellant Perez relies on the Supreme Court's decision in *Sherman v. United States*[10] to argue that because Douglas, a government informant, was "working him" for two months before he agreed to go forward with the drug transaction, he was induced, *i.e.,* entrapped, into committing the instant offense. In concluding that entrapment had been established as a matter of law, the Court in *Sherman* relied on the following undisputed testimony: The government informant, Kalchinian, similar to the government informant in the instant case, stood to benefit personally from his assistance to the government; he had been charged with selling drugs and had not yet been sentenced. Kalchinian met the defendant, Sherman, in a doctor's office where they were both undergoing treatment for narcotics addiction. Kalchinian himself testified that despite his knowledge that the defendant was seeking drug treatment, he sought to persuade Sherman to obtain drugs for him on the pretext that Kalchinian had been unable to kick his drug habit. Kalchinian met with the defendant on allegedly accidental, yet recurring, occasions and ultimately gained the defendant's sympathy. Kalchinian testified that his initial requests for drugs "were necessary to overcome, first, petitioner's refusal, then

his evasiveness, and then his hesitancy."[11] In order to ensure his success at ensnaring the defendant, Kalchinian induced the defendant to return to his drug habit. In concluding that the defendant had been entrapped, the Court rejected the government's reliance on two past narcotics convictions as evidence of predisposition, reasoning that "a nine-year old sales conviction and a five-year-old possession conviction are insufficient to prove petitioner had a readiness to sell narcotics at the time Kalchinian approached him, particularly when we must assume from the record he was trying to overcome the narcotics habit at the time."[12]

In support of his argument that *Sherman* requires reversal of his conviction, appellant Perez cites evidence that Douglas, having learned that Douglas' father had been arrested on cocaine possession, befriended Perez because he knew that Perez was a drug user; Douglas, appellant contends, spoke to DEA agents about turning Perez over to them in exchange for leniency in his father's drug prosecution. Douglas told Perez he needed to be put into contact with drug connections in order to make money to help his father; he asked if Perez would help. Appellant Perez contends that Douglas pressured him verbally and gave him two ounces of cocaine over a period of weeks in order to draw Perez into the drug plan.

■ While we share Perez' concern with the role of the government informant in cultivating his friendship and providing him with a free supply of cocaine,[13] our role on

---

**8.** *Andrews,* 765 F.2d at 1499 (citing *United States v. Jones,* 473 F.2d 293 (5th Cir.), *cert. denied,* 411 U.S. 984, 93 S.Ct. 2280, 36 L.Ed.2d 961 (1973)).

**9.** *United States v. Rodriguez,* 799 F.2d 649, 655 (11th Cir.1986).

**10.** 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

**11.** *Id.* at 373, 78 S.Ct. at 821.

**12.** *Id.* at 375, 78 S.Ct. at 822.

**13.** The Court in *Sherman* emphasized that baiting the recovering drug addict by encouraging him to return to his drug habit is government conduct which will not be tolerated:

> The case at bar illustrates an evil which the defense of entrapment is designed to overcome. The government informer entices someone attempting to avoid narcotics not only into carrying out an illegal sale but also into returning to the habit of use. Selecting the proper time, the informer then tells the government agent. The set-up is accepted by the agent without even a question as to the manner in which the informer encountered the seller. Thus the Government plays on the weaknesses of an innocent party and beguiles him into committing crimes which he otherwise would not have attempted. Law enforcement does not require methods such as this. 356 U.S. at 376, 78 S.Ct. at 822. As noted above, however, the distinguishing characteristic in

review is not to second guess the jury as to the credibility of witnesses and conflicting testimony.[14] In *Sherman*, the Court stressed that it was "not choosing between conflicting witnesses, nor judging credibility.... We reach our conclusion from the undisputed testimony of the prosecution's witnesses." [15] Here, on the other hand, the jury could have found from the evidence presented that Perez was, in fact, "a willing participant from start to finish" in the marijuana scheme.[16] The jury heard testimony that it was Perez, rather than Douglas, the government informant, who first suggested a marijuana transaction as a means of helping Douglas' father and making money for Perez. Testimony was presented that in order to persuade Douglas to get involved in the narcotics scheme, Perez boasted about having prior experience selling and transporting marijuana on a large scale.[17] Douglas testified that Perez' repeated harassment of Douglas about putting the deal together was a factor that led him and his wife to leave Florida. During the course of the investigation, Perez left notes and messages for Douglas several times in an attempt to contact him. Perez' interest in carrying the deal forward is further evidenced by his unsolicited offer to Kilmer of marijuana samples from various suppliers on August 17, 1987. These facts belie Perez' claim that he, like the petitioner in *Sherman*, demonstrated a real reluctance over a two-month period to participate in the drug transaction.

Moreover, the record supports a finding that Perez "was afforded an opportunity to back out of a transaction and did not." [18] Despite the unexplained disappearance of Douglas, the person he claimed initiated the deal, Perez expressed willingness to continue the transaction with Kilmer. Agent Kilmer, on several occasions, expressed concern that the deal might not be a good idea and was assured by Perez that everything was "in line" and that things were "perfect." Perez was given several opportunities to walk away from the deal, and he did not do so.

Entrapment, as the Supreme Court has stated, "is a relatively limited defense. It is rooted not in any authority of the Judicial Branch to dismiss prosecutions for what it feels to have been 'overzealous law enforcement,' but instead in the notion that Congress could not have intended criminal punishment for a defendant who has committed all the elements of a prescribed offense but was induced to commit them by the government." [19] The evidence present

---

Perez' case is the testimony presented as to his predisposition to commit the drug offense *notwithstanding* the government informant's conduct. As this court has recognized, "Where a defendant is predisposed to commit a crime, he cannot be entrapped, regardless of how outrageous or overreaching the government's conduct may be." *United States v. Rey,* 811 F.2d 1453, 1455 (11th Cir.), *cert. denied,* 484 U.S. 830, 108 S.Ct. 103, 98 L.Ed.2d 63 (1987) (citing *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973)).

14. *See also Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) ("It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence taking the view most favorable to the Government, to support it.").

15. 356 U.S. at 373, 78 S.Ct. at 821; *see also United States v. Walker,* 720 F.2d 1527, 1539 (11th Cir.1983) (rejecting reliance on *Sherman* and finding that because testimony regarding predisposition was in conflict, court would not reverse jury to hold that entrapment existed as a matter of law with respect to appellant), *cert. denied sub nom. Gustin v. United States,* 465 U.S. 1108, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984).

16. *Id.*

17. In *Sherman*, unlike the case before this court, there was "no evidence that petitioner himself was in the trade." *Sherman,* 356 U.S. at 375, 78 S.Ct. at 822. Here, on the other hand, appellant boasted of his significant involvement in drug trafficking. And, unlike the defendant in *Sherman*, there was no clear evidence that Perez was a narcotics addict who was trying to overcome his addiction. These factors further discredit any argument that the government "play[ed] on the weaknesses of an innocent party and beguil[ed] him into committing crimes which he otherwise would not have attempted." *Id.* at 376, 78 S.Ct. at 822.

18. *Rodriguez,* 799 F.2d at 655.

19. *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973).

ed sufficiently supports the jury's rejection of Perez' claim that he was induced to commit the instant offense by the government.

**B. Admissibility of Extrinsic Act Evidence.**

■ Perez' second argument is that the district court improperly admitted evidence that Perez told Douglas that he had been arrested for possession of several thousand pounds of marijuana. Perez claims that the evidence constituted extrinsic act evidence and that its admission violated Fed. R.Evid. 404(b) which provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It *may*, however, be admissible for other purposes, such as proof of motive opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Perez' argument fails because the statements made by Perez to Douglas do not constitute extrinsic acts. Perez' statements regarding his previous drug arrest and possession were made to Douglas when Perez was suggesting to Douglas that they put together a marijuana deal. The reasonable inference raised is that Perez told Douglas about his prior experience in order to persuade Douglas to go forward with the transaction. In this case, then, Perez' statements to Douglas are not being admitted for their truth or as extrinsic act evidence; Perez' statements indicate that he held himself out to be an experienced drug dealer and demonstrate that he wanted to engage in the illegal transaction.[20]

**C. Refusal of District Court to Give Ventura's Entrapment Defense.**

■ Appellant Ventura raises one issue on appeal: whether the district court properly refused to give the jury an entrapment instruction as to Ventura. A defendant who seeks to raise entrapment as an affirmative defense "has the initial burden of producing evidence, or of pointing to substantial evidence injected into the case by the government in presenting its proof" showing improper inducement by the government.[21] To satisfy this burden,

> [t]he defendant must demonstrate not merely inducement or suggestion on the part of the government but "an element of persuasion or mild coercion." ... The defendant may make such a showing by demonstrating that he had not favorably received the government plan, and the government had had to "push it" on him, ..., or that several attempts at setting up an illicit deal had failed and on at least one occasion he had directly refused to participate....[22]

■ Applying the law to the facts presented here, Ventura indicated no reluctance whatsoever to provide the marijuana to agent Kilmer. Nor is there any evidence that a government agent persuaded or coerced him in any way. Evidence that an agent sought out or initiated contact with the defendant is insufficient to entitle the defendant to an entrapment instruction.[23] Because Ventura failed to come forward with evidence sufficient to raise a jury issue of entrapment, we hold that the district court correctly refused to instruct on entrapment.

## CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.

**20.** *Cf. United States v. Chilcote*, 724 F.2d 1498, 1502 n. 2 (11th Cir.) (To satisfy the requirements of Rule 404(b), a defendant's "own statement, admitting that he committed the act, even if mere puffery, is sufficient to justify a jury finding that he committed the act."), *cert. denied*, 467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984).

**21.** *United States v. Parr*, 716 F.2d 796, 802 (11th Cir.1983).

**22.** *Andrews*, 765 F.2d at 1499 (citations omitted).

**23.** *Id.; United States v. Bagnell*, 679 F.2d 826, 835 (11th Cir.1982), *cert. denied*, 460 U.S. 1047, 103 S.Ct. 1449, 75 L.Ed.2d 803 (1983).