[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14620
Non-Argument Calendar

_____

D.C. Docket No. 2:12-cr-00346-IPJ-TMP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD JOE BARBER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(April 6, 2015)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Donald Joe Barber appeals his conviction and sentence for mailing a fictitious financial instrument with the intent to defraud, in violation of 18 U.S.C. § 514(a)(3), after having been found guilty of that offense by a federal jury. Barber was sentenced to serve 24 months in prison. Barber argues that the district court erred by (1) admitting testimony from a government agent regarding Barber's prior statements, which the government allegedly failed to disclose in violation of a standing discovery order and (2) applying an enhancement for intended loss under United States Sentencing Guidelines Manual ("U.S.S.G.") § 2B1.1(b)(1). After review of the record and the parties' briefs, we affirm.

## I.

At trial, the evidence established that Barber submitted a fictitious financial instrument, entitled a "bonded promissory note," to the servicer of his and his wife's home mortgage loan, which was then several months in arrears. The "bonded promissory note" purported to pay off the amount remaining on the mortgage—around $49,000—through funds in a secret "strawman" account held by the United States Treasury in his wife's name. This purported United States Treasury account, which does not exist, supposedly held millions of dollars.[1] After

---

[1] According to Barber's testimony at trial, the United States Treasury creates such a "strawman" account for every person born in the United States, using the individual's birth certificate as a bond with which to trade and fund the account. This description appears similar to what some courts have described as the "Redemptionist" theory. *See, e.g.*, *Monroe v. Beard*, 536 F.3d 198, 203 n.4 (3d Cir. 2008). The Third Circuit has explained that the "Redemptionist"

submitting the fictitious financial instrument to the mortgage servicer, Barber contacted the attorney representing the servicer in the Barbers' pending foreclosure case to inform her that the servicer would soon receive its payment from the United States Treasury.

Barber testified in his defense that he believed the "bonded promissory note" to be a lawful means by which to pay off his mortgage.  He explained that while his beliefs about the secret United States Treasury account may seem odd, they were honestly held.

## II.

Barber first contends that the district court erred in admitting a government agent's testimony that Barber had described the process by which he attempted to pay off his mortgage as a "scheme."  He contends that this statement was not disclosed by the government as required by a standing discovery order and by Rule 16, Fed. R. Crim. P.  The use of the word "scheme," Barber asserts, was the only evidence presented by the government tending to show that Barber had the specific intent to defraud when he sent the "bonded promissory note."

theory "propounds that a person has a split personality: a real person and a fictional person called the 'strawman.'"  *Id.*  The "strawman" supposedly came into existence when the United States went off the gold standard and pledged the "strawman" of its citizens as collateral for the country's national debt.  *Id.*  When the United States allegedly did so, "it created an 'exemption account' for each citizen, identified by each person's Social Security number."  *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 210 (D. Conn. 2010).  By submitting the appropriate documentation, the theory goes, an individual can gain access to his or her "strawman" account and make the federal government responsible for the individual's debts.  *See id.* at 209-10.

3

The standing discovery order provided that the government was required to disclose, among other things, "the substance of any oral statement(s) made by the defendant" to a government agent "which the government intends to offer in evidence at trial." *See also* Fed. R. Crim. P. 16(a)(1)(A).  At trial, the federal agent testified that Barber, in talking with the agent about the "bonded promissory note" and related documents, had informed the agent that Barber "went to a Sam Kennedy seminar in New York and learned this scheme to pay off his mortgage." Barber did not contemporaneously object to the agent's testimony on the grounds that the government had failed to disclose Barber's "scheme" statement.  Barber's counsel then cross-examined the agent on Barber's use of the word "scheme."

Because Barber did not contemporaneously object to the agent's testimony during trial, as he concedes, we review for plain error only.  *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007).  To demonstrate plain error, the appellant must establish that there is (1) an error (2) that is plain or obvious and (3) that has affected his substantial rights; and, if the first three prongs are met, we may exercise our discretion to correct the error if it (4) seriously affects the fairness, integrity, or public reputation of the proceedings.  *Id.* at 1276.

Here, the record is unclear as to whether there was in fact a discovery violation, and, therefore, whether there is an error.  The only evidence Barber asserts in support of his contention that the government violated the discovery

4

order is an email exchange between Barber's appellate counsel and his trial counsel. But the emails do not show that the government failed to meet its discovery obligations, only the possibility that it may have failed to do so. Nor is it clear from the trial transcript that either the defense or the prosecution was "surprised" by the statement, as Barber contends.

But even assuming error, it is not "plain." A "plain" error is one that is "clear" or "obvious." *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777 (1993). Absent a contemporaneous objection or other prior notification by Barber to the district court that the "scheme" statement was not disclosed properly, the government's failure to disclose would not have been clear to the court when the agent testified about the "scheme" statement.

Barber concedes that the purported error may not be "plain," but contends that this Court could remand to the district court for the limited purpose of conducting further fact finding about whether the government complied with its discovery obligations. *See, e.g.*, *United States v. Fernandez*, 780 F.2d 1573, 1577 (11th Cir. 1986) (remanding for further development of the factual record where the prosecution clearly failed to comply with a discovery order and the defendant consistently litigated that issue during the criminal proceedings). But Barber has not identified any precedent remanding for further fact finding where, as here, the lack of clarity in the record resulted from the defendant's failure to object

5

contemporaneously.  Remand in these circumstances would undermine the plain-error doctrine.  *Cf. United States v. Bonavia*, 927 F.2d 565, 570 (11th Cir. 1991) ("We note that the plain error doctrine should be applied sparingly lest the contemporaneous objection rule, requiring timely objections to preserve issues for appeal, be swallowed by the plain error exception.").

Nor has Barber shown that admitting evidence of the allegedly undisclosed statement affected his substantial rights.  *Turner*, 474 F.3d at 1276; *see United States v. Noe*, 821 F.2d 604, 607 (11th Cir. 1987) ("[A] violation by the government of the criminal discovery rules warrants reversal of a conviction only if the defendant shows prejudice to substantial rights.").  Specifically, Barber has not demonstrated a reasonable probability of a different result absent the alleged error.  *See United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005).

We have observed that "the failure of the government to disclose statements made by the defendant is so serious a detriment to the preparation for trial and the defense of serious criminal charges that where it is apparent . . . that the defense strategy may have been determined by the failure to disclose, there should be a new trial."  *Noe*, 821 F.2d at 607 (brackets and internal quotation marks omitted).  Therefore, when the government violates discovery rules in a criminal case, our inquiry focuses on how the violation affected the defendant's ability to present a defense.  *Id.*; *see also United States v. Camargo-Vergara*, 57 F.3d 993, 998-99

6

(11th Cir. 1995) ("Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense, or if the mistake substantially influences the jury.").

In challenging the admission of the "scheme" statement, Barber primarily relies on this Court's decision in *United States v. Rodriguez*, 799 F.2d 649 (11th Cir. 1986). In *Rodriguez*, a panel of this Court reversed the defendant's cocaine convictions and ordered a new trial where the government, in violation of Rule 16, Fed. R. Crim. P., failed to disclose that it had obtained certain names and telephone numbers from a wallet taken from the defendant upon his arrest. 799 F.2d at 651-52. This Court found that the defendant's substantial rights had been prejudiced when, while cross-examining the defendant, the government asked about the wallet and its contents in order to imply that the defendant, despite his testimony to the contrary, had close ties to Colombia, a "well known source of cocaine." *Id.* at 652-53. By failing to turn over for discovery the contents of the wallet, we concluded, the government "deprived Rodriguez of any chance to prepare his case to meet that evidence." *Id.* at 653.

*Rodriguez* does not support Barber's position that his substantial rights were violated in this case. Here, in contrast to *Rodriguez*, Barber's allegedly undisclosed statement was revealed in the government's case-in-chief, before Barber had to decide whether to testify, not on cross-examination after that

decision was made. *Cf. United States v. Arcentales*, 532 F.2d 1046, 1050 (5th Cir. 1976) (holding that the defendant failed to show prejudice in part because "the existence of the inculpatory statement became known during the government's case-in-chief.").[2]  For that reason, Barber also had the chance to cross-examine the agent about Barber's statement, and indeed did so extensively.

Barber also has not explained how his defense strategy was determined by the government's alleged failure to disclose the statement, or how he was deprived an opportunity to prepare a defense. *See Noe*, 821 F.2d at 607; *Rodriguez*, 799 F.2d at 652-53.  In his appellate brief, he acknowledges that his own testimony was "perhaps the most harmful aspect of the case to his own interests," but "speculate[s]" that he may not have testified had the "scheme" statement not been admitted.  The record, however, does not support that assertion.  When discussing preliminary matters with the district court before jury selection, Barber's counsel stated that he "expect[ed] Mr. Barber to testify."

Finally, we disagree that the "scheme" statement was the only evidence of Barber's fraudulent intent.  "Circumstantial evidence may prove knowledge and intent." *United States v. Macko*, 994 F.2d 1526, 1533 (11th Cir. 1993).  Here, the

---

[2]  We do not mean to suggest that prejudice can never be found when the government presents an undisclosed confession in its case in chief. *See, e.g., United States v. Ible*, 630 F.2d 389, 396-97 (5th Cir. 1980) (where undisclosed confession was "significant[ly] differen[t]" from disclosed version of confession and directly and plainly showed intent, defendant demonstrated prejudice).

government presented evidence that Barber sent a fictitious financial instrument in order to pay off his mortgage from an account that did not exist, and that this was the second time that he had attempted to do so, despite the fact that it did not work the first time that he sent the instrument.  Barber also testified that he did nothing to confirm the existence of the "strawman" account before representing to the mortgage servicer that the United States Treasury would satisfy the debt.  A reasonable jury could infer from these facts that Barber sent the instrument with the intent to defraud.  Moreover, by testifying that he believed that sending the "bonded promissory note" was a lawful means by which to pay off his mortgage, Barber ran the risk that the jury would disbelieve him and conclude that the opposite of his testimony was true. *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995).

In sum, Barber has not shown plain error because he has not demonstrated that the government violated its discovery obligations, and, even if the government did, Barber has not shown that the alleged error prejudiced his substantial rights.

**III.**

Barber also contends that the district court erred in applying an enhancement for an intended loss under U.S.S.G. § 2B1.1(b)(1).  We review a district court's loss calculation for clear error and its application of the Sentencing Guidelines *de novo*. *United States v. McCrimmon*, 362 F.3d 725, 728 (11th Cir. 2004).

9

Under the Sentencing Guidelines, a defendant may receive a six-level enhancement if the actual or intended loss of the offense conduct was more than $30,000 but no more than $70,000.  U.S.S.G. § 2B1.1(b)(1)(D).  "Intended loss" means "the pecuniary harm that was intended to result from the offense," and it "includes intended pecuniary harm that would have been impossible or unlikely to occur." *Id.* § 2B1.1 cmt. n.3(A)(ii).

The district court did not err in determining that the offense conduct involved an intended loss.  By finding Barber guilty of 18 U.S.C. § 514(a)(3), the jury determined that Barber mailed a fictitious financial instrument, the "bonded promissory note," "with the intent to defraud"—that is, the intent to deprive someone of something of value.  *See United States v. Svete*, 556 F.3d 1157, 1161 (11th Cir. 2009) (*en banc*) ("The words 'to defraud' commonly refer to wronging one in his property rights by dishonest methods or schemes, and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." (internal quotation marks omitted)).  Because Barber's conviction was based on mailing a fictitious instrument in order to pay off the approximately $49,000 remaining on his mortgage loan, it necessarily follows that a loss of around $49,000 was intended.

While Barber argues that he could not have intended a loss because the odds of the mortgage servicer or the United States Treasury suffering a loss were

minimal or non-existent, intended loss includes loss that is impossible or unlikely to occur.  U.S.S.G. § 2B1.1 cmt. n.3(A)(ii).  Therefore, the loss Barber intended to cause was properly included in the loss amount, however unlikely he was to succeed.

## IV.

In sum, the district court did not plainly err in admitting evidence of an allegedly undisclosed prior oral statement made by Barber to a government agent. Nor did the court err in applying the sentencing enhancement for intended loss under U.S.S.G. § 2B1.1(b)(1).  Therefore, we affirm.

**AFFIRMED.**[3]

---

[3] Barber's motion to file a reply brief out of time is GRANTED.