**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 24-12336

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DAMIEN JESSE SUHR,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cr-00121-PGB-EJK-1

_____

Before JILL PRYOR, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

"Hi, cutie." So read Damien Suhr's very first text message to "Jack," whom he had originally connected with on the dating app Badoo. Jack's Badoo profile said that he was 23, and after a bit

of initial chit-chat through the platform, Jack had given Suhr a phone number so they could text. Suhr immediately switched to texting and soon asked Jack for a photo. Jack obliged and Suhr responded with a heart emoji. Then Suhr—who had actually been married to a man for over a decade—asked if Jack minded that he was married to a woman. Jack said he didn't judge and then asked, "Do u like younger boys?" When Suhr expressed surprise, Jack explained that he was only 14 years old. "I'm just trying to be honest," he insisted. "Sometimes when I tell people my age, they stop talking to me and yell."

But Suhr didn't want to stop talking to Jack even though he knew exactly why other adult men would: "You're a cutie for sure, but this could be problematic." Even so, he soon turned the topic to sex. And despite daily reiterations of Jack's age, Suhr consistently turned the topic to sex and soon began describing in vulgar and graphic detail the kinds of sexual acts he wanted to engage in with Jack. Suhr thought it was "exciting" that Jack had no sexual experience and told Jack he loved "first-time experiences." Eventually Suhr arranged to meet Jack in person for sex; he even told Jack what kind of underwear to wear for their encounter.

"Jack," however, was an undercover agent rather than a 14-year-old boy. So when Suhr arrived at the meeting point, he was arrested. He was indicted on one count of attempted sexual enticement of a minor in violation of 18 U.S.C. § 2422(b) and convicted at trial. On appeal he argues that the district court erred

both in overruling his objection to the admission of overly prejudicial "other act" evidence and in denying his request for a jury instruction on entrapment. Because the district court did not abuse its discretion in admitting the evidence and because Suhr did not present sufficient evidence to warrant an entrapment defense, we affirm his conviction.

## I.

By entering a plea of not guilty to the charge of attempting to entice a minor to engage in illegal sexual activity, Suhr made intent "a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence." *United States v. Zapata*, 139 F.3d 1355, 1358 (11th Cir. 1998). So before trial, the government provided notice of its intent to introduce various pieces of "other act" evidence. Suhr moved to exclude this evidence, arguing that it was open to multiple interpretations and would be more prejudicial than probative. The district court granted the motion in part and denied it in part, excluding those portions of the evidence that merely demonstrated Suhr's sexual interest in adults, while admitting those that showed his sexual interest in children.

At trial, Suhr requested a jury instruction on entrapment, but the court denied it, finding that he had not presented sufficient evidence to warrant an entrapment defense. The jury found Suhr guilty, and he now appeals.

## II.

We review evidentiary rulings for abuse of discretion. *United States v. Bell*, 112 F.4th 1318, 1331 (11th Cir. 2024).

But we review de novo a district court's ruling on whether the defendant produced sufficient evidence to warrant a jury instruction on entrapment. *United States v. Davis*, 902 F.2d 860, 866 (11th Cir. 1990).

## III.

Suhr challenges his conviction on two grounds: the admission of "other act" evidence over his objection and the denial of his request for a jury instruction on entrapment.

## A.

Suhr limits his objection to the admission of "other act" evidence to a single video that showed him engaged in a consensual sexual encounter with another male. Although he testified at trial that the other person in the video was "an adult who is in college," the government produced evidence that Suhr had previously claimed that the other person was only 15 at the time. Suhr argues that the video was inadmissible for two reasons: (1) the government did not prove that it depicted a criminal act, and (2) it was overly prejudicial because homosexual acts are "considered repulsive."

In criminal trials, the Federal Rules of Evidence prohibit the admission of propensity evidence, meaning evidence "of any other crime, wrong, or act" introduced for the purpose of showing "that

on a particular occasion the person acted in accordance with the character" demonstrated by that other act. Fed. R. Evid. 404(b)(1). Such propensity evidence is excluded whether the acts are criminal or not.

But Rule 404(b) *permits* the admission of such "other act" evidence "for another purpose, such as proving motive, opportunity, intent," and so on. And because "Rule 404(b) is a rule of inclusion," the evidence it allows, "like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case." *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003) (quotation omitted).

This Court employs a three-part test for the admissibility of "other act" evidence: "First, the evidence must be relevant to an issue other than the defendant's character; second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; and finally, the probative value of the evidence must not be substantially outweighed by its undue prejudice." *United States v. Perry*, 14 F.4th 1253, 1275 (11th Cir. 2021) (quotations omitted).

All three prongs are met here. *First*, the government explained that it was introducing the video to show Suhr's "intent, motive, knowledge, absence of mistake, and sexual interest in minor children, as well as to show his predisposition to commit the charged offense to rebut any entrapment defense." Because Suhr had made his intent a material issue in the case by pleading not guilty and denying that he had the requisite intent to sexually solicit

a minor, the video was relevant to an issue other than Suhr's character.

*Second*, the video clearly depicted Suhr, and the government introduced evidence—in the form of statements by Suhr—that the other person in the video was a minor, so there was enough evidence for the jury to conclude that Suhr had in fact engaged in a sexual act with a minor.

*Third*, the probative value of the video in demonstrating Suhr's sexual interest in minor children was not outweighed by the danger of unfair prejudice, a balance this Court evaluates by considering "the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Brown*, 441 F.3d 1330, 1362 (11th Cir. 2006). On the one hand, the video had substantial probative value regarding Suhr's intent. And on the other, its possible prejudicial impact in terms of drawing attention to Suhr's homosexuality was minimal, being both limited by all the other evidence at trial that amply demonstrated his homosexuality (including the live testimony of his *husband*) and mitigated by the district court's limiting instructions. *Cf. United States v. Edouard*, 485 F.3d 1324, 1346 (11th Cir. 2007).

Because all three prongs for the admission of "other act" evidence were satisfied, we cannot say that the district court abused its discretion in admitting the video. But even if it had, that error would have been harmless because the evidence against Suhr

was overwhelming. *Cf. United States v. Frediani*, 790 F.3d 1196, 1202 (11th Cir. 2015).

## B.

Suhr also objects to the district court's denial of his request for a jury instruction on entrapment. "Entrapment is an affirmative defense which requires the defendant to present some evidence of government misconduct or improper inducement before the issue is properly raised." *Davis*, 902 F.2d at 866. "The defendant has the initial burden of producing evidence to establish government misconduct," and the "sufficiency of the defendant's evidence is a question of law." *Id.*

In reviewing a district court's denial of an entrapment instruction, this Court looks only at "whether there was sufficient evidence produced to raise the issue of government inducement." *United States v. Mayweather*, 991 F.3d 1163, 1176 (11th Cir. 2021). The defendant must produce "some evidence, more than a scintilla, that government agents induced him to commit the offense." *Id.* (quoting *United States v. Timberlake*, 559 F.2d 1375, 1379 (5th Cir. 1977)). But "a defendant cannot show inducement merely by showing that the government provided an attractive opportunity to commit a crime." *Id.* at 1177 (quotation omitted). Rather, inducement requires "an opportunity *plus* some added government behavior that aims to pressure, manipulate, or coerce the defendant into criminal activity." *Id.*

Here, Suhr never produced evidence that the government presented him with anything more than an "attractive

opportunity."   On the contrary, it was Suhr who first turned the conversation with Jack to sex, Suhr who always initiated conversation with Jack about sex, and Suhr who first suggested meeting up with Jack for sex.  And far from pressuring Suhr into committing a crime, Jack repeatedly encouraged Suhr to make his own decisions and repeatedly offered Suhr opportunities to back out.  But Suhr "indicated no reluctance whatsoever" to engage in sexual activity with Jack, so he was not entitled to an entrapment defense.  *United States v. Ventura*, 936 F.2d 1228, 1233 (11th Cir. 1991).

★      ★      ★

The district court's judgment is **AFFIRMED**.