[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14782

Non-Argument Calendar

_____

BRO. T. HESED-EL,

Plaintiff-Appellant,

*versus*

ALDRIDGE PITE, LLP,

BRAGG & ASSOCIATES REAL ESTATE, LLC,

WELLS FARGO BANK N.A.,

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Defendants-Appellees.

———————————

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 1:19-cv-00162-JRH-BKE

———————————

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Bro. T. Hesed-El (occasionally referred to as "Stephen Lee" in the record) appeals the dismissal of his second amended complaint, the denial of leave to amend, and the denial of his motions for post-judgment relief. After careful review, we affirm.

## I. Background

In this case, Hesed-El brings a variety of claims broadly relating to the nonjudicial foreclosure sale of, and his eviction from, two properties in Augusta, Georgia: (a) 3620 Goldfinch Drive (Goldfinch); (b) 2828 Meadowbrook Drive (Meadowbrook). Because it's relevant to the issues on appeal, we summarize the progression of this case before the district court.

### A. Original Complaint

Hesed-El initiated this case in September 2019 by filing a 36-page complaint, consisting of 208 paragraphs and alleging thirteen counts. In an attached "Affidavit in Support of Complaint,"

consisting of 49 paragraphs, Hesed-El restated or added to the complaint's factual allegations and listed two additional counts.

Since Hesed-El moved to proceed *in forma pauperis* ("IFP"), a magistrate judge screened his filings and ordered him to file an amended complaint.   The magistrate judge found that the complaint was a "shotgun pleading" that "patently violates" Rule 8(a)(2), Fed. R. Civ. P., noting that each of its thirteen counts incorporated by reference all the complaint's factual allegations, and that it included extraneous information not connected to any claim.   The magistrate judge gave detailed instructions for the amended complaint, warning that failure to comply may result in dismissal.   Among other things, the magistrate judge ordered Hesed-El to "state in the single amended complaint . . . all claims that he wishes the Court to consider."   Also, the judge stated, Hesed-El "shall not incorporate [exhibits to the complaint] by reference as a means of providing the factual basis for his pleading."

## B.  First Amended Complaint

On September 23, 2019, Hesed-El submitted a 24-page amended complaint consisting of 95 paragraphs and raising nine claims.   While shorter than the original complaint, the amended complaint still violated the magistrate judge's order.   Hesed-El failed to remove the information identified by the magistrate judge as extraneous and irrelevant.   And he didn't limit his allegations to a single filing, again bolstering the pleading's factual allegations with an "Affidavit in Support of Complaint."

In November 2019, Hesed-El filed a motion to clarify the amended complaint and submitted proposed amendments. The magistrate judge granted the motion, finding that the defendants, who had just appeared in the case, would not be prejudiced. But the magistrate judge again ordered Hesed-El to "include all of his allegations in one document"—a stand-alone "complete amended complaint"—and not to "incorporate by reference 'affidavits and exhibits on file,' as he attempt[ed] to do on the first page" of his proposed amendments.

## C. Second Amended Complaint

On November 14, 2019, Hesed-El submitted a thirteen-page second amended complaint consisting of 77 paragraphs and raising ten claims. In clear violation of the magistrate judge's instructions, he also attached as an exhibit a seven-page "Bill of Particulars" containing an additional 63 paragraphs of allegations, which the second amended complaint purported to "incorporate[] by reference as if stated verbatim" in the complaint.

We review these filings in more detail before turning to the defendants' motions to dismiss.

### 1. Second Amended Complaint's Allegations and Claims

As noted above, Hesed-El's claims relate to two properties in Augusta, Georgia, which we refer to as "Goldfinch" and "Meadowbrook." Hesed-El purchased Goldfinch in 2007 with a loan from Wells Fargo's predecessor of $82,900, which was secured by the property. In September 2015, in response to an inquiry by Hesed-

El, Wells Fargo provided him a mortgage payoff quote of $86,509.24. On September 26, 2015, according to the pleading, Wells Fargo "received two checks from Plaintiff, via certified mail," in the amounts of $86,467.24 and $42.00. In Hesed-El's view, therefore, his mortgage balance "should be $0.00."

Wells Fargo failed to apply these funds to Hesed-El's mortgage balance or to return the funds. Instead, Hesed-El alleged, it reported to credit agencies that the mortgage loan was delinquent. It also hired Aldridge Pite, LLP, to send debt letters in anticipation of foreclosure, which "falsely implied the involvement of an attorney" and were "purposely mailed to incorrect mailing addresses." Then, in January 2018, Wells Fargo sold Goldfinch to the Federal National Mortgage Association (Fannie Mae) without complying with "all the requirements of O.C.G.A. § 44-14-160, et seq." And in July 2019, Fannie Mae, through its agent Bragg & Associates Real Estate, LLC, allegedly evicted Hesed-El from Goldfinch without satisfying "all the requirements of O.C.G.A. § 44-7-50 et seq."

In September 2016, Hesed-El asserted, he took possession of Meadowbrook after it was "abandoned" by the previous occupants, whom he didn't know. He claimed title to Meadowbrook by some sort of adverse-possession theory and by "restoration of right." In April 2017, in Hesed-El's view, Wells Fargo sold Meadowbrook to Fannie Mae without satisfying "all the requirements of O.C.G.A. § 44-14-160, et seq." Then, Fannie Mae, through its agent Bragg & Associates, allegedly evicted him from Meadowbrook

without satisfying "all the requirements of O.C.G.A. § 44-7-50 et seq."

Hesed-El raised a variety of claims based on these allegations. He accused Wells Fargo of breaching the payoff agreement by refusing to credit his two checks (Count 1); wrongfully converting the payoff money (Count 2); violating the Fair Credit Reporting Act ("FCRA"), the Federal Debt Collection Practices Act ("FDCPA"), and state consumer-protection law by reporting and attempting to collect on the alleged debt after the attempted payoff (Count 3); negligently representing it would apply the payoff funds (Count 4); unjustly enriching itself (Count 5); inducing his reliance on a promise to apply the payoff funds (Count 6); and wrongfully foreclosing on Goldfinch (Count 7). In addition, Hesed-El alleged that Aldridge Pite joined in the consumer-protection violations (Count 3), that Fannie Mae, Aldridge Pite, and Bragg & Associates wrongfully evicted him from Goldfinch and Meadowbrook (Count 8), that all defendants deprived him of steady rental income and the chance to sell both homes (Count 9), and that all defendants were jointly and severally liable (Count 10).

2.  Attached "Bill of Particulars"

The second amended complaint also purported to "incorporate by reference" the factual allegations contained in a seven-page "Bill of Particulars" attached as an exhibit. The exhibit restated some allegations and added some new ones.

Among other things, the Bill of Particulars expanded on the alleged consumer-protection violations.  According to that document, Well Fargo hired Aldridge Pite "to conduct a dunning campaign using computer-generated letters to collect the alleged debt" from Hesed-El.  As part of that campaign, the Bill of Particulars continued, Aldridge Pite sent "at least six separate initial debt letters" to an "incorrect name and address."  And the letters allegedly otherwise "failed to include a clear and prominent statement indicating whether an attorney was involved in the drafting of the debt letter as required by *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005)."

In addition, the Bill of Particulars described in more detail Hesed-El's eviction from Goldfinch and Meadowbrook.  Hesed-El claimed that he was "not a 'mere squatter' or tenant" of Meadowbrook but was instead "acting as the landlord."  Similarly, he said he had been renting out Goldfinch to others.  Hesed-El asserted that Fannie Mae and its agents failed to send him any demand to surrender the properties or to serve him with the dispossessory affidavits and summonses.  And he maintained that the defendants lacked "any lawful title to Goldfinch or Meadowbrook."

### 3.  Motions to Dismiss

The defendants moved to dismiss the second amended complaint.  Fannie Mae and Wells Fargo jointly argued that dismissal was warranted under Rule 12(b)(6), Fed. R. Civ. P., because the complaint failed to state a plausible claim to relief.  They noted that Hesed-El relied on frivolous legal theories which had been

uniformly rejected in federal and state courts.  They also attached 91 pages of exhibits, including loan and foreclosure documents and Hesed-El's payoff attempt, which they asserted were central to his claims and so could be considered at the motion-to-dismiss stage.

In separate motions, Aldridge Pite and Bragg & Associates likewise sought dismissal of the second amended complaint for failure to state a claim.  Aldridge Pite attached 139 pages of exhibits to its motion to dismiss.  It also contended that the second amended complaint violated Rule 8 and the court's order requiring that all allegations be included in one document.

Hesed-El filed a response, arguing that the motions to dismiss should be denied and that the court should not consider the exhibits attached to the motions.  Fannie Mae, Wells Fargo, and Aldridge Pite filed replies.

### 4.  Exhibits Attached to the Motions to Dismiss

The documents attached to the defendants' motions to dismiss including copies of the following: (a) the security deed and note Stephen Lee (now Hesed-El) executed in connection with the purchase of Goldfinch in 2007, and an assignment of the deed to Wells Fargo in 2010; (b) the letter and checks Hesed-El sent to Wells Fargo to pay off his mortgage balance in 2015; and (c) documents related to the nonjudicial foreclosure sales of Goldfinch and Meadowbrook, including letters sent to Hesed-El by Aldridge Pite.

Regarding the payoff attempt, the defendants' evidence showed that Hesed-El sent two checks to Wells Fargo along with

20-14782               Opinion of the Court                    9

an explanatory letter in September 2015.  One check appears to be an ordinary postal money order for $42.00.  The other check, in the amount of $86,467.24, appears to be a personal check from Stephen Lee (Hesed-El) on which various incoherent information has been written by hand.  The top left lists Lee's preprinted name and contact information, as well as a nine-digit "Bond #" and an eleven-digit "BC #" in handwriting.  The check is designated at the top as an "International Bill of Exchange MONEY ORDER" and is written out to "UNITED STATES TREASURY—CREDIT TO: WELLS FARGO HOME MORTGAGE."  In the area below that, a person has written "Deposit UNITED STATES TREASURY ONLY." If our brief description of this check leaves any doubt, we agree with the defendants and the district court that the "bill of exchange" quite plainly is not real money.[1]

## C. Proposed Third Amended Complaint

---

[1] In a letter sent with the check, Lee cited various irrelevant statutes and instructed Wells Fargo to present the enclosed "bill of exchange" to the "Secretary of the Treasury," who would exchange it for U.S. currency because Lee had "deposited a Private Registered Bond for Offset and Discharge in the United States Treasury for this very purpose."  As the district court observed, the check appears to rely on frivolous legal theories propounded by the so-called "redemption movement," under which the U.S. Government, after abandoning the gold standard, allegedly started using its citizens as collateral and set up a secret account for each citizen at birth, which citizens can "redeem" or reclaim to pay bills by invoking certain procedures. See, e.g., United States v. Barber, 606 F. App'x 533, 534 n.1 (11th Cir. 2015); Stevenson v. Bank of Am., 359 S.W.3d 466, 468 n.6 (Ky. Ct. App. 2011).

On January 9, 2020, after the motions to dismiss were fully briefed, Hesed-El filed a motion to amend the complaint and attached a proposed third amended complaint. He explained that he had reviewed the relevant standards regarding shotgun pleadings and acknowledged that all three of his complaints may have violated those standards. Yet he stressed he didn't intend to burden the court or the defendants, he made a good-faith mistake, his proposed complaint was free of the prior deficiencies, and the defendants would not be prejudiced by amendment. The defendants opposed any further amendment.

The third amended complaint incorporated allegations that were previously in the Bill of Particulars and expanded on facts underlying the consumer-protection claims. It also dropped the claims based directly on the payoff attempt, without clearly saying why, and instead raised just five causes of action: (1) violation of the FCRA; (2) violation of the FDCPA; (3) wrongful foreclosure of Goldfinch by Wells Fargo; (4) wrongful evictions from both properties by Fannie Mae, Aldridge Pite, and Bragg & Associates; and (5) negligence based on a substantial portion of the defendants' alleged conduct.

Contrary to Hesed-El's claim, the third amended complaint was not free of the deficiencies noted in his earlier pleadings. It still included information previously identified by the magistrate judge as extraneous and irrelevant. And Hesed-El again failed to limit his factual allegations to a single filing, submitting an "Affidavit in

20-14782            Opinion of the Court            11

Support of 3rd Amended Complaint" containing an additional fifteen paragraphs of factual allegations.

D.  *District Court's Dismissal of Second Amended Complaint and Denial of Leave to Amend*

On June 12, 2020, the district court dismissed Hesed-El's second amended complaint.[2]  To start, it described the complaint as a "shotgun pleading" that impermissibly used an attached affidavit to bolster the complaint, in direct violation of the court's prior orders regarding earlier versions of the complaint.  Alone, the court stated, this was "an independent basis to dismiss Plaintiff's second amended complaint."

Nonetheless, the district court proceeded to "detail[] the frivolity of Plaintiff's lawsuit" and addressed each claim alleged in the second amended complaint and why it failed as a matter of law.  In doing so, the court stated that it could consider the defendants' exhibits without converting the motions to dismiss into motions for summary judgment because the documents were central to Hesed-El's claims and he didn't meaningfully dispute their authenticity.  It also appears the court declined to consider the factual allegations

---

[2] The district court also imposed a $200 "frivolity bond" for one year in all future cases filed by Hesed-El, but Hesed-El has abandoned any challenge to that ruling by failing to meaningfully address it in his initial brief on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014) (passing references to an issue are not enough to properly raise it for review). To the extent he raises an argument in the reply brief, it "come[s] too late." *Id.* at 683.

in the attached Bill of Particulars and instead limited its analysis to the allegations in the second amended complaint.

On the merits of Hesed-El's claims, the district court found that several claims failed because they were supported solely by conclusory or "threadbare" allegations of wrongdoing, including the FDCPA claim against Wells Fargo and Fannie Mae, the state consumer-protection claim, the wrongful-foreclosure claim, and the wrongful-eviction claim. Many other claims—including for breach of contract, conversion, negligent representation, promissory reliance, and violating the FCRA—relied on the "frivolous" assertion that the "International Bill of Exchange Money Order" was legal tender and so, in the court's view, were not plausible. The court noted that other courts have uniformly found similar payment instruments to be fictitious currency. As for the FDCPA claim against Aldridge Pite, the court stated that Aldridge Pite "expressly made known its participation as foreclosure counsel," and that foreclosure counsel's nonjudicial foreclosure on a security interest is not "debt collection" under the FDCPA as a matter of law.

Finally, the district court denied Hesed-El's motion for leave to file a third amended complaint. The court cited five "independent[]" grounds for its decision: (1) undue delay, because the proposed third amended complaint included a new negligence claim based on facts known long before the motion was filed; (2) bad faith, since Hesed-El waited for the defendants to fully brief their motions to dismiss his meritless shotgun pleading before moving to amend; (3) repeated failure to cure deficiencies, because Hesed-

El, in the court's view, admitted the second amended complaint was a shotgun pleading, and because his proposed third amended complaint, like his prior pleadings, defied the magistrate judge's order "prohibiting Plaintiff's practice of filing piecemeal complaints incorporating affidavits"; (4) undue prejudice, because the proposed amendments continued a pattern of "asserting new causes of action not present in the pleading before"; and (5) futility, since the allegations for each proposed claim, even accepted as true, didn't state a plausible claim to relief. The court also noted that Hesed-El had previously filed several lawsuits involving the same defendants and issues as in this action.

### E. Post-Judgment Issues

Following the entry of judgment, Hesed-El submitted several filings requesting reconsideration of the denial of leave to amend, "judicial notice" of various information and documents, and a hearing, among other things. The district court denied these requests on November 30, 2020. The court found no grounds to reconsider any of its rulings, stating that Hesed-El simply disagreed with the court. And it saw "no reason to take judicial notice" since the case was closed. Hesed-El now appeals.

## II. Standards of Review

We review *de novo* the dismissal of a complaint for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., accepting the complaint's factual allegations as true and construing them in the

light most favorable to the plaintiff. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

"We review a dismissal on Rule 8 shotgun pleading grounds for an abuse of discretion." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018). Likewise, we review a district court's decision to deny leave to amend for an abuse of discretion. *Woldeab v. Dekalb Cnty. Bd. Of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018). Finally, we review "the denial of post-judgment motions under an abuse of discretion standard." *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233 (11th Cir. 2002). A court abuses its discretion when it makes a clear error of judgment, applies the wrong legal standard, or relies on clearly erroneous factual findings. *Sleeth v. Comm'r of Internal Revenue*, 991 F.3d 1201, 1204 (11th Cir. 2021).

## III. Discussion

On appeal, Hesed-El primarily argues that the district court erred in denying leave to file a third amended complaint, challenging each of the five grounds cited by the court. While making those arguments, he also contends that the second amended complaint was filed in compliance with the magistrate judge's orders and was not a shotgun pleading, and that it stated at least one plausible claim to relief. We start with the dismissal of the second amended complaint and then address leave to amend.

### A. Dismissal of Second Amended Complaint

We affirm the dismissal of the second amended complaint for failure to state a claim.  Therefore, we need not directly resolve whether the second amended complaint was also subject to dismissal with prejudice as a shotgun pleading or for failure to follow a court order.

To obtain reversal of a judgment on appeal, the appellant must convince us that each of the "stated ground[s] for the judgment against him is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).  Part of doing that involves "plainly and prominently" raising the issues for which appellate review is sought.  *Id.* at 681.  References to an issue in passing or in conclusory terms are insufficient and will result in abandonment of the issue on appeal.  *See id.* ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").  And while we liberally construe *pro se* briefs, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

Here, Hesed-El has abandoned any challenge to the dismissal of the second amended complaint for failure to state a plausible claim.  Hesed-El's initial brief on appeal doesn't address the district court's thorough reasoning for dismissing the claims in that pleading on the merits, except for this lone statement: "As to the second amended complaint, at the very least, Plaintiff stated a plausible claim against Aldridge Pite in that it used false, deceptive, or

16                    Opinion of the Court                    20-14782

misleading representations or means in connection with the collection of a debt."

Such a passing, conclusory statement is insufficient to raise that issue for review, even in light of Hesed-El's *pro se* status. *See Timson*, 518 F.3d at 874. Hesed-El doesn't explain how the allegations in the second amended complaint stated a plausible FDCPA claim; he simply asserts that they did. Nor does he identify any deficiencies in the district court's reasons for dismissing that claim based on the factual allegations in the second amended complaint, as opposed to his other filings. And because his initial brief otherwise fails to address the claims in the second amended complaint, we must conclude that he has abandoned any challenge to the dismissal of that pleading as a whole for failure to state a claim.[3] *See*

---

[3] Hesed-El maintains that the district court erred by considering the exhibits to the motions to dismiss without converting the motions to ones for summary judgment. But we agree with the district court that many of the documents, including the payoff checks, certain loan documents, and debt letters, were referenced in the second amended complaint and central to Hesed-El's claims, and their authenticity wasn't meaningfully disputed. *See Horsley v. Feldt*, 304 F.3d 11251134 (11th Cir. 2002). Hesed-El also fails to connect the court's consideration of any particular document to its dismissal of any particular claim in the second amended complaint. So his argument on this point is insufficient to preserve a challenge to the dismissal of the second amended complaint. *See Sapuppo*, 739 F.3d at 681–82. In any case, he no longer seeks to raise claims based on the payoff attempt, and the claims for wrongful foreclosure and wrongful eviction were dismissed as being threadbare and conclusory, not due to information from the defendants' exhibits.

*Sapuppo*, 739 F.3d at 680–81.  We affirm the dismissal of the second amended complaint on this basis.

## B.  Denial of Leave to Amend

Before trial, district courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In exercising its discretion to grant or deny leave to amend a pleading, a district court may consider several factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009) (quotation marks omitted).

The mere passage of time, without anything more, is an insufficient reason to deny leave to amend, *Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001), but "[a] district court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend, and amendment would further delay the proceedings," *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1186 (11th Cir. 2013). We we have recognized that prejudice to the defendant "is especially likely to exist if the amendment involves new theories of recovery." *Id.* (quotation marks omitted).

Here, the district court's decision to deny leave to file a third amended complaint was well within its discretion.    Most

importantly, Hesed-El repeatedly failed to cure deficiencies in his pleadings despite repeated amendment opportunities. Both times Hesed-El was granted leave to amend, he was warned not to incorporate by reference factual allegations in attached exhibits and to include all his factual allegations and claims in a single document.[4] Despite these clear instructions, Hesed-El continued to submit and rely on factual allegations contained solely in affidavits attached as exhibits to the complaint. For example, less than a week after the magistrate judge ordered him to "include all of his allegations in one document" and not to "incorporate by reference affidavits," Hesed-El filed a second amended complaint which did just the opposite, purporting to "incorporate by reference" the factual allegations contained in a seven-page Bill of Particulars attached to the complaint. And his proposed third amended complaint, with an accompanying "Affidavit in Support of 3rd Amended Complaint," was not meaningfully different.

Thus, the record supports the district court's conclusion that Hesed-El repeatedly "failed to correct defects of which [he] had notice." *See Bryant v. Dupree*, 252 F.3d 1161, 1164 (11th Cir. 2001). And Hesed-El's "repeated failure to cure deficiencies by previous amendments is an explicitly permitted reason for which the district

---

[4] Hesed-El asserts that he was penalized simply for attaching exhibits to his complaints, as the pleading rules permit. But that's not what happened. Rather, the problem was Hesed-El presented his factual allegations in piecemeal fashion across multiple documents, which made it difficult to discern the claims he was raising and their factual grounds.

court was entitled to deny his motion to amend." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (cleaned up).

Nor was that the only factor supporting the denial of leave to amend. The record supports the district court's findings that Hesed-El delayed in seeking amendment without good reason, did so only after the defendants had fully briefed the merits of his claims in the second amended complaint, and included a new theory of recovery in the proposed third amended complaint based on facts known long before he sought leave to amend. *See Tampa Bay Water*, 731 F.3d at 1186.

In moving for leave to file a third amended complaint, Hesed-El acknowledged that, upon further review of the relevant standards, his prior complaints were likely "shotgun" pleadings. But he failed to explain why he hadn't reviewed the relevant standards earlier, such as after receiving the magistrate judge's order calling the initial compliant a shotgun pleading at the outset of the case and giving him detailed instructions on filing a proper complaint. Rather, it appears he acted only after the defendants had fully briefed their motions to dismiss the second amended complaint for failure to state a claim—pointing out that most of Hesed-El's claims were based on the frivolous assertion that the "International Bill of Exchange Money Order" was real money and not a worthless piece of paper. Moreover, Hesed-El's proposed amendments were substantial and substantive, not merely clarifying. Despite suggesting that the defendants had misinterpreted the second amended complaint, he dropped the claims based on the payoff attempt entirely.

He then added a new and expansive cause of action for negligence based on facts known at the outset of the case.

While the district court could have permitted further amendment in these circumstances, we are not convinced it was an abuse of discretion to deny leave. After all, the decision to grant leave to amend is a discretionary one, and the court identified multiple factors, supported by the record, that weighed in favor of denying leave to amend. *See Equity Lifestyle Props.*, 556 F.3d at 1241. Accordingly, Hesed-El hasn't shown that the district court abused its discretion by denying leave to amend.

## C. Denial of Post-Judgment Motions

Finally, we affirm the denial of Hesed-El's various post-judgment motions. Reconsideration of a judgment generally is warranted only where newly discovered evidence is presented or manifest errors of law or fact are shown. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). Post-judgment motions are not for relitigating old matters or presenting arguments or evidence that could have been raised before the entry of judgment. *Id.*

Here, the district court reasonably denied Hesed-El's post-judgment motions. Hesed-El largely used these motions to reargue matters that the district court had already addressed or to raise issues that could have been raised before the entry of judgment. *See id.* Moreover, Hesed-El presented no grounds for holding a hearing, and his requests for judicial notice related to alleged facts

that didn't undermine the court's judgment or provide grounds for reconsideration.

## IV. Conclusion

In sum, we affirm the dismissal of Hesed-El's second amended complaint for failure to state a claim, the denial of his motion for leave to file a third amended complaint, and the denial of his various post-judgment motions.

**AFFIRMED.**[5]

---

[5] Hesed-El's motion for leave to supplement the record on appeal is **DENIED** as moot.